### In re NHC–NASHVILLE FIRE LITIGATION.

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 27, 2007 Session.

Nov. 21, 2008.

Permission to Appeal Denied by Supreme Court June 15, 2009.

Alfred H. Knight and Alan D. Johnson, Nashville, Tennessee, for the intervenor-

appellant, Gannett Satellite Information Network, Inc., d/b/a *The Tennessean*.

H. Lee Barfield, II, David A. King, Andrea T. McKellar, and Stephen J. Jasper, Nashville, Tennessee, for the appellee, National HealthCare Corporation ("NHC").

William B. Hubbard and Cynthia H. Wiel, Nashville, Tennessee, for amicus curiae, Tennessee Hospital Association.

Allan F. Ramsaur, Marcia M. Eason, and William L. Harbison, Nashville, Tennessee, for amicus curiae, Tennessee Bar Association.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

This appeal involves a news organization's access to documents subject to a protective order. A fire occurred at a Nashville nursing home, resulting in numerous deaths and injuries. The fire spawned over thirty lawsuits against the nursing home, which were consolidated for discovery and trial. To facilitate discovery and mediation, the trial court issued a series of protective orders which restricted the disclosure of all unfiled discovery materials and ordered that any discovery materials filed with the court be filed under seal. The local newspaper intervened and filed successive motions to lift or modify the protective orders, seeking access to all discovery materials, both filed and unfiled. In its initial order, the trial court denied the newspaper's motion to lift the protective order as to unfiled discovery without stating the reasons for its decision. It granted the motion to unseal discovery materials filed with the court. Subse-

quently, an order was entered requiring that future-filed discovery materials be initially filed under seal pending a hearing on whether the documents should remain under seal. Discovery materials were later filed under seal in connection with a summary judgment motion. The newspaper sought access to the documents, and the defendant nursing home objected. After a hearing, the trial court lifted the seal on all but a few categories of the filed discovery materials. The newspaper now appeals, arguing that the trial court erred in establishing a protocol requiring all documents to be filed under seal without first finding compelling justification for sealing them, and also in refusing to lift the protective order on unfiled discovery without finding "good cause" for closure under T.R.C.P. 26.03. The newspaper urges the appellate court to, in essence, adopt the procedures set forth in a rule previously proposed to the legislature, but later withdrawn. We find that we are without authority to adopt the proposed rule or a procedure similar to it. We also find no abuse of discretion in the trial court's order establishing a protocol requiring that all discovery documents initially be sealed pending a later hearing. Finally, we find that the trial court's implicit finding of good cause to maintain the protective order on unfiled discovery was sufficient, and that its decision was not an abuse of discretion.

### FACTS AND PROCEDURAL HISTORY

On the night of September 25, 2003, a fire raced through a four-story nursing home on Patterson Street in west Nashville. The residential portion of the facility had no sprinkler system, as it was built before such a system was required.[1] De-

---

1. After the Nashville nursing home fire, the Centers for Medicaid and Medicare Services issued a rule requiring all long-term care fa- cilities to have sprinkler systems by August 2013. Previously, only newly constructed and rehabilitated nursing homes were re-

spite the efforts of firefighters and nursing home employees to evacuate the 117 vulnerable residents, at least sixteen people died as a result of the fire and countless others were injured.

As a result of the tragic fire, thirty-two victims filed lawsuits against the owner of the nursing home, Defendant/Appellee National HealthCare Corp. ("NHC") and related entities, with more than twenty attorneys representing the various plaintiffs. These cases were consolidated in the Circuit Court for Davidson County, Tennessee, under the heading "In re: Nashville Fire Litigation." The fire and the ensuing litigation generated intense local and national media attention, some focused on improving the safety of nursing homes to prevent such tragedies in the future.

This appeal centers on the efforts of Intervenor/Appellant Gannett Satellite Information Network, Inc., d/b/a *The Tennessean* ("The Tennessean"), a Nashville newspaper, to gain access to documents related to the Nashville Fire Litigation. Consequently, our outline of the procedural history will be limited primarily to the proceedings pertinent to the issues on appeal.

For about five months after the fire, there were no restrictions on media access to the parties, the witnesses, or any other individual with information relevant to the fire or its cause. On February 26, 2004, the trial court entered the first protective order in the consolidated litigation, agreed upon by the plaintiffs and NHC, which prohibited those involved in the litigation from disclosing certain photographs produced by the State Fire Marshall's office, the Nashville Fire Department, and the Medical Examiner. *The Tennessean* had

not yet intervened in the consolidated litigation. On March 17, 2004, a second protective order was entered. This was a "blanket" protective order, agreed upon by the parties. It prohibited the disclosure of all discovery materials produced by the parties in the consolidated cases. Discovery materials were "deemed to be confidential in nature, such that production of the [discovery information] would potentially disclose proprietary business information, a trade secret, or other non-public or sensitive commercial or financial information that would not normally be revealed to third parties." The protective order provided that, if any documents subject to the protective order were filed with the court, they would be filed under seal. Subsequent orders entered by the trial court incorporated its previous protective orders.

After the blanket protective order on discovery materials was issued, one of the Plaintiffs named as a defendant the Metropolitan Government of Nashville and Davidson ("Metro"), alleging negligence on the part of the Metro Fire Department. Subsequently, the trial court entered an order extending the protective order provisions to Metro, but that extension expired three months later, as provided in the orders.[2]

Discovery ensued, pursuant to an expedited discovery schedule. Intensive mediation efforts were undertaken. As a result, 28 of the 32 cases were settled within a year after the fire. On October 26, 2004, the trial court entered an order temporarily sealing the judicial record related to the settled cases.

---

quired by the federal government to have such systems. *See Centers for Medicaid and Medicare Services Press Release,* June 18, 2008.

2. The claims against Metro were ultimately dismissed and are not at issue in this appeal.

On November 12, 2004, after holding case management conferences with the attorneys, the trial court entered a scheduling order on the cases that remained pending. The order provided that the confidentiality provisions of the trial court's previous protective orders would remain in effect. On November 23, 2004, the trial court entered an order placing the entire file under seal until further notice of the court.

Sometime in November 2004, a local television station aired an investigative series on the nursing home fire, sparking renewed media attention. After that, in December 2004, Metro filed a motion to lift or modify the protective order as it related to unfiled discovery as well as the sealing of the judicial record.[3] Shortly thereafter, on December 30, 2004, The Tennessean filed a motion to intervene in the litigation and to request that the trial court lift its order sealing the judicial records. In its response, NHC stated that it had no objection to unsealing the judicial record, except with respect to transcripts and documents that addressed protective order issues or confidential settlements with the defendants. NHC maintained, however, that the blanket protective order should remain in place as to unfiled discovery. NHC argued that the interest in a fair and efficient resolution of the dispute and the privacy interests of the parties constituted good cause to justify the continued protection of all unfiled discovery. See Tenn. R. Civ. P. 26.03. In their response, the Plaintiffs did not object to either unsealing the judicial records or lifting the protective order on unfiled discovery, so long as the protective orders continued to restrict disclosure of photographs of the victims, documents that reflected the victims' medical or personal information, and confidential settlement amounts.

On February 7, 2005, the trial court held a hearing on The Tennessean's motion to unseal the judicial record and on Metro's motion to lift or modify the protective order. The parties agreed to permit The Tennessean to intervene. At the hearing, The Tennessean adopted Metro's argument and maintained that the protective order should be lifted or modified as it related to unfiled discovery. After the hearing, the trial court issued its oral ruling, unsealing all judicial records related to any settled and pending cases arising from the fire except those judicial records, if any, that reflected confidential settlements. The trial court also modified the protective order on unfiled discovery to permit public access to the written deposition transcripts and deposition exhibits of the fire department witnesses, emergency medical service witnesses, and state employees, with the caveat that the transcripts and exhibits from the depositions of Tennessee Department of Health employees would not be publicized until the completion of the deposition of every witness employed by that department.

With respect to unfiled discovery still covered by the protective order, the trial court, citing Ballard v. Herzke, 924 S.W.2d 652 (Tenn.1996), ordered NHC to prepare and submit to the court in camera a document-by-document inventory of the remaining discovery for which NHC sought protection. It required NHC to articulate individualized grounds for continued protection for each document. The trial court indicated that, after it received NHC's inventory and the grounds for protecting the documents, it would hear objections to the continued protection of the in camera sub-

---

3. Because its Fire Department employees had been accused of negligence or wrongdoing, Metro wanted the public to have access to all of the information related to the fire and the resulting deaths.

mission at a later date. On February 23, 2005, the trial court entered a written order consistent with its oral ruling.

Shortly after that, on February 28, 2005, the Plaintiffs filed a motion asking the trial court to authorize the immediate release of all depositions of NHC employees, certain witness affidavits, and the surveillance video and fire alarm history from the night of the fire. NHC did not object to the release of the surveillance video and fire alarm history from the relevant time period on the night of the fire, so long as employee identification was redacted prior to the release of those items. NHC maintained that the depositions of NHC employees and witness affidavits needed to remain subject to the protective order.

On March 14, 2005, in accordance with the trial court's February 23, 2005 order, NHC submitted an *in camera* inventory of the unfiled discovery that remained subject to the blanket protective order, as well as the grounds for continued protection as to each item. The 145–page document listed hundreds of exhibits, documents, and responses to interrogatories, along with general and specific objections to disclosure as to each item. On April 4, 2005, *The Tennessean* filed its response, asserting that NHC's listed objections did not specify the harm that would result from the disclosure of the information and, thus, did not demonstrate good cause for the continued confidentiality of the unfiled discovery.

On April 26, 2005, the trial court conducted a hearing on the Plaintiffs' motion for release of additional materials as well as *The Tennessean's* motion to lift or modify the trial court's protective order as it related to certain unfiled discovery. As a result of the hearing, the trial court released from protection the surveillance video and fire alarm history from the night of the fire. It took under advisement the re-

lease of depositions of NHC employees and witness affidavits that had not been filed with the court. Later, by agreement of the parties, the trial court released depositions of employees of the Tennessee Department of Health and the Tennessee Bomb and Arson Section, with the proviso that certain medical and personal information would be redacted before those materials were made public.

On August 19, 2005, the Plaintiffs filed a motion asking the trial judge to recuse herself from the case. The recusal motion was denied. The Plaintiffs then sought an interlocutory appeal to the Tennessee Court of Appeals and then to the Tennessee Supreme Court. The trial court stayed the proceedings pending the outcome of those appeals. The Tennessee Court of Appeals denied permission to appeal, and on February 27, 2006, the Tennessee Supreme Court also denied the Plaintiffs' request for an interlocutory appeal. At that point, the stay on the trial court proceedings ended. Thus, the proceedings related to the motion to recuse lasted over six months, during which time the consolidated cases were put on hold.

On March 24, 2006, NHC filed a motion for partial summary judgment on the issue of punitive damages. Attached to the motion were certain documents, such as affidavits and the Plaintiffs' discovery responses, submitted under seal.

Subsequently, on May 8, 2006, NHC filed a supplemental response to *The Tennessean's* motion to lift or modify the trial court's protective order, asserting that the circumstances had changed since the April 26, 2005 hearing. NHC noted that the mediation phase of the litigation had fully concluded, and that factual discovery was nearly completed. In light of the changed circumstances, NHC proposed that all discovery filed with the court in the future be made available to the public unless specifi-

cally designated to remain under seal. NHC suggested procedures requiring that (1) the parties file only discovery documents which they believed in good faith to be relevant to the proceedings, and (2) all filed discovery be submitted under seal initially, then later unsealed unless the trial court sustained an objection to unsealing the document.

On May 12, 2006, in light of NHC's supplemental response, the trial court conducted a rehearing on *The Tennessean's* motion to lift or modify the protective order. At the hearing, *The Tennessean* argued against having the discovery documents filed under seal initially, in the absence of a finding by the trial court that there was a compelling reason for doing so.

On July 10, 2006, the trial court entered an order reflecting its ruling on the matters discussed in the May 12, 2006 hearing. The trial court first denied *The Tennessean's* motion to lift or modify the blanket protective order with respect to unfiled discovery, without elaborating on its reasons for doing so. Second, as to documents filed under seal, the parties were required to submit to the court a proposed order itemizing each document previously filed under seal with the court that should remain under seal.[4]

As to discovery to be filed with the court in the future, the trial court modified the protective order "by agreement of the Court and all parties."[5] The order stated that all discovery filed with the trial court "shall be made available to the public, unless specifically designated by the Court to remain under seal." The trial court

specified protocols and procedures for future filed documents:

> (3) From this point forward, the parties shall file only those specific discovery documents and/or deposition excerpts which they believe in good faith are relevant to and admissible in the court proceeding at hand.

> (4) All such filings shall be made under seal initially. During the related court proceedings on the motion or hearing for which the documents are filed, the Court will hear any objections to the release of any specific filed discovery item or portion thereof. Thereafter, the seal shall be lifted as to all such filed discovery materials, except as ordered by the Court for specific objections which are sustained. The records which are unsealed shall be made available to the public within two business days after any such court hearing.

Thus, documents were to be filed under seal initially, with objections to unsealing the documents heard at a later date.

On September 1, 2006, after the implementation of the new protocols, the Plaintiffs filed a response to NHC's motion for partial summary judgment. In support of their response, the Plaintiffs attached a large number of discovery and other documents. In accordance with the new protocols, the discovery documents were initially filed under seal pending the hearing on NHC's motion for summary judgment. On October 9, 2006, NHC filed objections to unsealing some of the discovery documents filed in support of the Plaintiffs' response to the motion for partial summary judgment.

---

4. NHC and the Plaintiffs disagreed on which documents should remain under seal, and so submitted separate proposed orders.

5. *The Tennessean* states in its appellate brief that "[c]ounsel for *The Tennessean* had apparently left the courtroom" when the procedures set forth in the July 10, 2006 order were discussed by the Plaintiffs and NHC.

On October 17 and 20, 2006, the trial court held a hearing on NHC's motion for partial summary judgment and set a later date for a hearing on NHC's objections to unsealing the supporting documents. Subsequently, in November 2006, the Plaintiffs and *The Tennessean* filed responses to NHC's objections, asserting that all of the filed documents should be unsealed. On November 7, 2006, the trial court entered an order granting in part and denying in part NHC's motion for partial summary judgment on punitive damages.

On December 4, 2006, the Plaintiffs settled their claims against NHC. Consequently, the Plaintiffs withdrew their opposition to NHC's objections to unsealing the documents related to the summary judgment motion. Therefore, the only dispute that remained was the dispute between NHC and *The Tennessean* over unsealing the discovery documents filed by the Plaintiffs in their response to NHC's motion for summary judgment.

On December 8, 2006, the trial court conducted a hearing on the remaining dispute between NHC and *The Tennessean.* By the time of the hearing, NHC and *The Tennessean* had reached an agreement on the publication of almost all of the filings in the case. On December 20, 2006, the trial court entered its final order. The order unsealed all of the documents filed with the trial court except: (1) some documents regarding a particular fire victim's mental competency, (2) the transcript of a deposition of a medical examiner regarding a particular fire victim's cause of death, and (3) some expert affidavits that had been filed by the Plaintiffs in opposition to NHC's motion for partial summary judgment. *The Tennessean* now appeals.

## ISSUES ON APPEAL

On appeal, *The Tennessean* contends overall that the trial court did not follow constitutionally mandated procedures for filing documents under seal, and did not follow applicable law as to whether pretrial discovery not filed with the trial court should be subject to a protective order. Specifically, *The Tennessean* argues that the trial court erred in implementing a protocol that required all discovery to be initially filed under seal with the trial court, with unsealing the documents to be considered only at a later hearing. The newspaper claims that the resulting delayed access to these materials is tantamount to a denial of access to public records. *The Tennessean* further argues that the trial court erred in its July 10, 2006 order denying the newspaper's motion to lift or modify the blanket protective order as to unfiled discovery. It asserts that the trial court abused its discretion in delaying its decision on this issue for several months, and then in failing to make specific findings on the record regarding whether good cause still existed to keep the public from having access to each of those unfiled discovery documents. *The Tennessean* submits that the procedure set forth in the proposed Rule 1A to the Tennessee Rules of Civil Procedure, proposed by the Tennessee Supreme Court to the legislature and later withdrawn, provides the best framework for such protective orders, and that this Court should endorse such a rule in this case.

## ANALYSIS

### Scope of Appellate Review

*The Tennessean* challenges both the trial court's July 10, 2006 order denying the newspaper's motion to lift or modify the protective order with respect to unfiled discovery, and the December 20, 2006 order insofar as it upheld the protocols for filing documents under seal without individual scrutiny. As a threshold issue, NHC argues that questions arising from

the trial court's July 10, 2006 order are beyond the scope of this appeal, because the notice of appeal filed by *The Tennessean* did not identify the July 10, 2006 order as a "judgment from which relief is sought." *See* Tenn. R.App. P. 3(f). Instead, the notice of appeal identifies only "the final judgment entered in this case on the 20th day of December, 2006." *The Tennessean* acknowledges that the notice of appeal did not specifically identify the July 10, 2006 order. It contends, nevertheless, that the notice of appeal was sufficient to give NHC notice that it was appealing all of the trial court's decisions related to the protection of discovery from public access. Because the notice of appeal provided sufficient notice, it argues, issues related to the July 10, 2006 order are properly before this Court.

In arguing that issues related to the trial court's July 10, 2006 order are beyond the scope of *The Tennessean's* appeal, NHC relies on Rule 3(f) of the Tennessee Rules of Appellate Procedure. Rule 3(f) states:

> The notice of appeal shall specify the party or parties taking the appeal, *shall designate the judgment from which relief is sought,* and shall name the court to which the appeal is taken.

Tenn. R.App. P. 3(f) (emphasis added). Thus, Rule 3(f) mandates that the notice of appeal designate the judgment being appealed. The advisory comment to Rule 3(f) states:

> This subdivision specifies the content of the notice of appeal. The purpose of the notice of appeal is simply to declare in a formal way an intention to appeal. As long as this purpose is met, it is irrelevant that the paper filed is deficient in some other respect. Similarly, the notice of appeal plays no part in defining the scope of appellate review. Scope of review is treated in [T.R.A.P.] 13. This

subdivision read in conjunction with rule 13(a) permits any question of law to be brought up for review [except as otherwise provided in rule 3(e) ] as long as any party formally declares an intention to appeal in a timely fashion.

Tenn. R.App. P. 3(c) advisory committee cmt. We consider whether issues related to the trial court's July 10, 2006 order may be considered in this appeal, in light of the language of Rule 3(f) and the accompanying advisory comment.

Citing the language in Rule 3(f), this Court has at times refused to consider issues raised on appeal that were resolved in an order other than the one specified in the notice of appeal. In *Cox v. Shell Oil Co.,* 196 S.W.3d 747 (Tenn.Ct.App.2005), the trial court entered at least two orders on July 7, 2004, disposing of different issues. In their notice of appeal, the appellants in *Cox* stated that they were appealing the July 7, 2004 order "in which the Court denied [the appellants'] Joint Motion for Reconsideration of the Court's prior order dismissing the contempt remedies sought by [the appellants]." *Cox,* 196 S.W.3d at 760 (quoting notice of appeal). The appellants did not mention the other order entered on July 7, 2004, in which the trial court granted the appellee's judicial estoppel motion. In their appellate brief, the appellants raised issues that were resolved in the order granting the judicial estoppel motion. Citing Rule 3(f), the appellate court held that the appellants' failure to designate the order granting the judicial estoppel motion in the notice of appeal precluded a review of that order. Thus, its review was limited to issues arising from the order dismissing the motion for reconsideration. Because the judicial estoppel order was not appealed and was dispositive of the case, the issues regarding the motion for reconsideration were pretermitted and the trial court's decision

was affirmed. *Id.* at 761; *see Hall v. Hall,* 772 S.W.2d 432, 436 (Tenn.Ct.App.1989) (holding that "the clear and specific wording of the notices of appeal limits the issues on this appeal to the judgment designated in the notices"); *see also Grigsby v. Univ. of Tenn. Med. Ctr.,* No. E2005–01099–COA–R3–CV, 2006 WL 408053, at *2 (Tenn.Ct.App. Feb.22, 2006) (refusing to review issues arising out of an order that was entered over two months after the notice of appeal was filed, when the appellant did not file another notice of appeal to include the subsequent order); *Howse v. Campbell,* No. M1999–01580–COA–R3–CV, 2001 WL 459106, at *3 (Tenn.Ct.App. May 2, 2001) (same, but commenting that the court's decision will depend on "the effectiveness of the notice in alerting the appellees that the appellant intended to seek further judicial review of the trial court's judgment").

In other cases, the appellate court has focused on whether the "notice function" of Rule 3(f) has been served, to determine whether the scope of review must be limited to the order designated in the notice of appeal. In *Thompson v. Logan,* No. M2005–02379–COA–R3–CV, 2007 WL 2405130 (Tenn.Ct.App. Aug.23, 2007), the trial court entered an order on the merits of the case on June 20, 2005. On August 29, 2005, the trial court entered an order denying the appellants' motion to alter or amend. On September 23, 2005, the appellants filed a notice of appeal, designating the June 20, 2005 and August 29, 2005 orders by date and content. However, at the time the notice of appeal was filed, a motion for sanctions remained outstanding, so the notice of appeal was premature. On December 12, 2005, the trial court entered an order granting the motion for sanctions against the appellants. *Thompson,* 2007 WL 2405130, at *9. The appellants did not amend their notice of appeal, nor did they file an additional notice of appeal to designate the December 12, 2005 order as one of the orders being appealed.

In their appellate brief, in addition to appealing the June and August 2005 orders, the appellants challenged the December 12, 2005 order imposing sanctions. The issue then became whether the appellants "were required to amend their Notice of Appeal to specifically include the order on sanctions, or should the premature Notice be interpreted to include that order."[6] *Id.* at *11.

The *Thompson* court cited with approval *Consolidated Waste Systems, LLC v. Metropolitan Government,* No. M2002–02582–COA–R3–CV, 2005 WL 1541860 (Tenn.Ct. App. June 30, 2005). In *Consolidated Waste,* the trial court entered a final order on the merits of the litigation on August 6, 2002. On October 16, 2002, the trial court entered an order awarding attorney's fees to the prevailing party. The appellant's notice of appeal was filed on October 17, 2002; it specified only the order entered on August 6, 2002. *Consol. Waste,* 2005 WL 1541860, at *42. In its appellate brief, however, the appellant raised an issue related to the attorney's fee award. The appellee argued that, because the October 16, 2002 order was not designated in the notice of appeal, any issue arising out of that order was not properly before the court. The appellate court rejected that

6. The appellants in *Thompson* first argued that the trial court was without jurisdiction to enter the order imposing sanctions, because a notice of appeal had been filed and jurisdiction had been transferred to the Court of Appeals. The appellate court rejected this argument, because the August 29, 2005 had not adjudicated all of the claims and, therefore, was not a final order. The appellate court held that, consequently, the notice of appeal, filed September 23, 2005, was premature. *Thompson,* 2007 WL 2405130, at *11.

argument, expressing a "clear preference" for a liberal interpretation of Rule 3(f):

> We are aware of the varying interpretations of the requirements of Tenn. R.App. P. 3(f). Further, the clear preference is for liberality in interpreting a notice of appeal and the scope of appeal. While it is true that the Metropolitan Government's notice of appeal did not inform Consolidated that it intended to appeal the attorney's fee award, Consolidated cannot point to any prejudice it suffered from the failure of the Metropolitan Government to designate the attorney's fee judgment. In these circumstances, we think the better view is that the Metropolitan Government can raise any issue resulting from the trial court's final judgment.

*Thompson*, 2007 WL 2405130, at *17 (quoting *Consol. Waste*, 2005 WL 1541860, at *45).

Adopting the reasoning employed in *Consolidated Waste*, the *Thompson* court held that "a failure to follow the designation requirement of Rule 3(f) is not necessarily fatal and the court is not precluded from considering issues in orders or judgments not specifically designated." *Id.* at *13; *see Dunlap v. Dunlap*, 996 S.W.2d 803, 810 (Tenn.Ct.App.1998) (permitting arguments arising from an order not identified in the notice of appeal, emphasizing that appellant's oversight in designating the order neither prejudiced the appellee nor hampered the appellate court in its review). The *Thompson* court emphasized the language in the advisory commission comments to Rule 3(f), stating that "the notice of appeal plays no part in defining the scope of appellate review," as well as the advisory commission comments to Rule 13(a) stating that "[t]his subdivision rejects use of the notice of appeal as a review-limiting device." *Id.* at *12. The *Thompson* court noted:

> [O]f course, an appeal from a final judgment brings up all pre-judgment orders or decisions, and any question of law or fact may be considered. Tenn. R.App. P. 13(a); *Anderson v. Standard Register Co.*, 1992 WL 63421, at *2–3 (holding that the designation in the notice of appeal of the final judgment dismissing the complaint included the prejudgment denial of a motion to amend the complaint). . . .

*Id.* at *16. After reviewing several cases involving an attempt to raise issues arising from orders not designated in the notice of appeal, the court concluded, that, when timeliness of the notice of appeal is not an issue, "the guiding principle must be whether the notice of appeal provided the notice which is its purpose." *Id.* (citing *Consol. Waste*, 2005 WL 1541860, at *44–45). Under the circumstances in that case, the *Thompson* court permitted the appellants to challenge the later-entered award of sanctions, even though the order was not designated in the notice of appeal, because the appellee was neither taken by surprise nor prejudiced by permitting the appellants to raise the argument.

█ In the case at bar, then, the issue is whether the notice of appeal filed by *The Tennessean* afforded sufficient notice to NHC that *The Tennessean* intended to raise issues adjudicated in the trial court's July 10, 2006 order relating to unfiled discovery. NHC does not argue that it was taken by surprise, or that it would be prejudiced by permitting *The Tennessean* to argue the error of the July 10, 2006 order. Indeed, the July 10, 2006 and the December 20, 2006 orders involved the same parties, and both reflect the ongoing debate in the course of the litigation over whether certain discovery materials should be made accessible to the public. *See, e.g.*, *Howse*, 2001 WL 459106, at *3 (involving different parties who were dismissed at

different times and, consequently, some never received notice that their dismissal was being appealed). We accord great deference to the advisory commission comments to the effect that Rule 3(f) is not intended to limit the scope of review so long as the notice of appeal informs the appellee that the appellant intends to seek further review of the trial court's judgment. We agree with the *Thompson* court's observation that "an appeal from a final judgment brings up all pre-judgment orders or decisions, and any question of law or fact may be considered." *Thompson*, 2007 WL 2405130, at \*16. In light of all of these circumstances, we find that failure to designate the July 10, 2006 order in the notice of appeal does not preclude *The Tennessean* from raising issues on appeal stemming from the order.

### Standard of Review

■ Generally, the granting, denying, or modifying of a protective order relating to discovery procedures under Rule 26.03 rests within the sound discretion of the trial court. *Ballard*, 924 S.W.2d at 659; *Summers v. Cherokee Children's & Family Servs. Inc.*, 112 S.W.3d 486, 530 (Tenn. Ct.App.2002). Accordingly, the decision of a trial judge on a protective order is reviewed on appeal for an abuse of discretion. The abuse of discretion standard has been described as follows:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001) (citations omitted). "The burden of establishing abuse of discretion is on the party seeking to overturn the trial court's ruling on appeal." *Ballard*, 924 S.W.2d at 659.

### Protective Orders

■ We now consider issues raised by *The Tennessean* regarding documents filed with the court under seal and unfiled documents subject to the blanket protective order. As background, we note that Article I, Section 17 of the Tennessee Constitution provides explicitly that "the courts shall be open." Tennessee courts have long recognized that judicial proceedings are presumptively open:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*State v. Drake*, 701 S.W.2d 604, 607–08 (Tenn.1985) (quoting *Press–Enter. Co. v. Superior Court*, 464 U.S. 501, 506, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)).

■ The openness of judicial proceedings extends to judicial records. *See Knoxville News–Sentinel v. Huskey*, 982 S.W.2d 359, 362–63 (Tenn.Crim.App.1998). Indeed, the United States Supreme Court has observed that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 1316, 55 L.Ed.2d 570 (1978) (footnotes omitted). The Tennessee Supreme Court has described the origins

and reasons for the public right to access judicial records:

> The public's right to access provides public scrutiny over the court system which serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding. *Grove Fresh Distributors, Inc.*, 24 F.3d at 898. The right of access to judicial proceedings and records was originally justified by common law traditions predating the enactment of the federal Constitution. The common law right of access establishes that court files and documents should be open, unless the court finds that the records are being used for improper purposes. *Id.* Moreover, the First Amendment to the Constitution presumes that there is a right of access to proceedings and documents which have "historically been open to the public" and which disclosure would serve a significant role in the functioning of the process. *Id.*

*Ballard*, 924 S.W.2d at 661. The Tennessee Supreme Court has cautioned that "any restriction on public access [to judicial records] must be narrowly tailored to accommodate the competing interests without unduly impeding the free flow of information." *Huskey*, 982 S.W.2d at 363. However, the common law right of access to judicial records is not absolute. *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306. "Every court has supervisory power over its own records and files, and access has been denied where court files might have be-come vehicles for improper purposes," such as promoting public scandal or publication of libelous statements. *Id.*

The trial court's inherent supervisory authority over its own records and files, then, is the genesis of Rule 26.03 of the Tennessee Rules of Civil Procedure. Rule 26.03 provides that, upon motion by any party "and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Such "protective orders" limit access to certain documents or information, or withhold documents from public view. *See* 20 Am.Jur.2d *Courts* § 30 (2005). As set forth in Rule 26.03, protective orders can take innumerable forms, such as limiting the subjects or terms under which discovery may be conducted, limiting the persons in whose presence discovery is conducted, or redacting sensitive information from documents disclosed in the course of litigation. *See id.*

 This case involves two types of protections. Some documents were ordered by the trial court to be filed "under seal,"[7] which generally means that the document in question is filed with the court clerk as part of the court's record in the case, but the clerk and the parties are prohibited from showing the document to anyone not a party to the lawsuit.[8] Other documents at issue in this case were produced by one party to the opposing party, usually in response to a discovery request, but were never filed with the court clerk.

---

7. Traditionally, a "seal" is "[a]n impression upon wax, wafer, or some other tenacious substance capable of being impressed." BLACK'S LAW DICTIONARY 1348 (6th ed. 1990). "Sealing of records" means "to close by any kind of fastening that must be broken before access can be obtained." *Id.* at 1349. In modern times, this often means that the documents are kept in an opaque covering, taped shut, in the court clerk's file, and designated as "under seal."

8. Access to documents under seal may at times be limited to the attorneys for the parties, so that even the parties themselves cannot see them. *See, e.g., Ballard*, 924 S.W.2d at 655.

The trial court issued a protective order prohibiting the parties from disclosing the unfiled discovery documents outside the range of persons described in the order.[9] The Tennessee Supreme Court has explained the function of protective orders:

> Protective orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings. In addition, protective orders are often used by courts as a device to aid the progression of litigation and to facilitate settlements. Protective orders strike a balance, therefore, between public and private concerns.

*Ballard,* 924 S.W.2d at 658 (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir.1994)).

### *Ballard* Opinion

The definitive opinion in Tennessee on protective orders is *Ballard v. Herzke, supra.* For that reason, we will review the facts in *Ballard* and its holding. As background, at the time the *Ballard* opinion was issued, Rule 5.05 of the Tennessee Rules of Civil Procedure required that, in the absence of a court order or local rule to the contrary, all discovery responses were filed with the court. Tenn. R. Civ. P. 5.05. *Ballard* arose out of Shelby County, which had no local rule exempting discovery responses from the filing requirement, and thus centered on discovery responses that were filed with the court. *Id.* at 662. In *Ballard,* after hearing a discovery dispute, the trial court, *sua sponte,* issued a blanket protective order requiring all discovery responses to be filed under seal and prohibiting the parties from disclosing the information to third parties. Numerous discovery documents were filed under seal, pursuant to the protective order. Because the case had generated substantial media coverage, the newspaper, *inter alia,* filed a motion to intervene and asked the trial court to rescind its protective order and open all records and proceedings to the press and to the public.[10] In response to the newspaper's motion, the trial court rescinded the protective order and held, with limited exceptions, that the discovery materials filed with the court were "public records and should be open." *Id.* at 656. The defendant was given permission to file an interlocutory appeal. On appeal, the intermediate appellate court reversed, observing that the defendants had relied on the protective order in responding to the discovery requests, and finding that dissolving the protective order would permit the distribution of private, irrelevant data that might not otherwise have been discovered. The Tennessee Supreme Court granted the newspaper permission to appeal the intermediate appellate court's decision.

At the outset of its analysis, the *Ballard* Court addressed the standard governing the initial issuance of a protective order and the standard for modifying an existing protective order. In considering whether to issue an initial protective order, the Court held, the trial court must ascertain

---

9. A protective order may be issued at the behest of one party or with the agreement of all parties. Indeed the parties may enter into a confidentiality agreement without the imprimatur of the court, in which they agree not to voluntarily disseminate unfiled discovery beyond the persons designated in the agreement. "Such a confidentiality agreement ... does not require court approval or intervention." *Retail Experts Consul. & Mgmt., Inc. v. Premium Retail Serv., Inc.,* No. 05 C 6337, 2006 WL 1719564, at *3 (N.D.Ill. June 15, 2006).

10. The intervenors in *Ballard* were *The Tennessean* and The Society of Professional Journalists.

whether there is "good cause" to prevent disclosure of the documents in accordance with Rule 26.03:

> To establish "good cause" under Rule [26.03], the moving party must show that disclosure will result in a clearly defined injury to the party seeking closure. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not amount to a showing of good cause. Mere conclusory allegations are insufficient. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order is on the party seeking the order.
>
> In determining whether good cause has been established for a protective order, it is important that trial courts balance one party's need for information against the injury that would allegedly result if disclosure is compelled. Factors in the balance weighing against a finding of good cause include: (1) the party benefiting from the protective order is a public entity or official; (2) the information sought to be sealed relates to a matter of public concern; and (3) the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency. On the other hand, factors in the balance weighing in favor of a finding of good cause include: (1) the litigation involves private litigants; (2) the litigation concerns matters of private concern or of little legitimate public interest; and (3) disclosure would result in serious embarrassment or other specific harm. No particular weight is assigned to any factor, and the balancing test allows trial courts to evaluate the competing considerations in light of the facts of each individual case.

*Id.* at 658–59 (citations omitted).

When faced with a motion to modify an existing protective order, the *Ballard*

Court stated, the trial court should re-evaluate the factors relevant to a "good cause" determination. In addition, the trial court should consider the degree to which the parties relied on the protective order in conducting discovery. *Id.* The Court observed that blanket orders of protection "are particularly useful in effecting cooperation and expediting the flow of pretrial discovery; however, they are also, by nature, over inclusive, less likely to induce reasonable reliance, and, therefore, peculiarly subject to later modification." *Id.* at 660. For this reason, the Court opined, when the trial court is considering whether to lift or modify a blanket protective order, "the party seeking to maintain confidentiality must designate the documents alleged to be confidential and then establish that good cause exists with respect to those documents." *Id.* Ultimately, the *Ballard* Court reversed the intermediate appellate court and concluded that the trial court did not abuse its discretion in modifying the blanket protective order. *Id.* at 661.

### Filed Documents vs. Unfiled Documents

As emphasized in the appellate brief filed by Amicus Tennessee Hospital Association ("THA"), *Ballard* dealt exclusively with discovery filed with the court and did not address protective orders on *unfiled* discovery. Contrary to the court system in Shelby County, the system in Davidson County, out of which this case arose, has a local rule exempting discovery responses from the filing requirement. *See* Davidson County Local Rule of Practice 9.01, *cited in Ballard,* 924 S.W.2d at 662. Therefore, all discovery documents exchanged by the parties in this case remained unfiled unless and until they were filed with the court by one of the parties. The distinction be-

tween filed and unfiled documents bears examination in this case.

In Tennessee, the public access doctrine described in *Ballard* is codified in the Tennessee Public Records Act. Tenn.Code Ann. § 10–7–101, *et seq.* (1999). The Act defines "public records" subject to public access as "the pleadings, documents, and other papers *filed* with the Clerk of the all courts." *See Ballard*, 924 S.W.2d at 661 (emphasis in *Ballard* ) (quoting Tenn.Code Ann. § 10–7–403). If discovery responses are required to be filed with the clerk of the court, those responses "are 'public records' within the meaning of the law." *Id.* at 662.

■ The definition of public or judicial records described in *Ballard* must be contrasted with *unfiled* discovery. Unlike filed discovery, pretrial depositions, interrogatories, and other discovery materials not filed with the court "are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *see also Ballard*, 924 S.W.2d at 661–62. The *Rhinehart* Court explained:

> [P]retrial depositions and interrogatories . . . were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, *restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.*

*Rhinehart*, 467 U.S. at 33, 104 S.Ct. 2199 (emphasis added; citations omitted). The Court emphasized the private nature of discovery proceedings:

> Discovery rarely takes place in public. Depositions are scheduled at times and places most convenient to those in-

volved. Interrogatories are answered in private. Rules of Civil Procedure may require parties to file with the clerk of the court interrogatory answers, responses to requests for admissions, and deposition transcripts. Jurisdictions that require filing of discovery materials customarily provide that trial courts may order that the materials not be filed or that they be filed under seal. Federal district courts may adopt local rules providing that the fruits of discovery are not to be filed except on order of the court. Thus, to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court.

*Id.* at n. 19 (citations omitted). Thus, in applying *Ballard* in this case, we must be cognizant of the distinction between unfiled discovery and the filed discovery that was the subject of the dispute in *Ballard.* The Ballard court found only that discovery responses that are filed with the court are "public records." *Ballard*, 924 S.W.2d at 662. Moreover, the Ballard court repeatedly cited favorably an influential law review article by Professor Arthur Miller on protective orders and public access to the courts, in which Professor Miller draws a clear distinction between documents filed with the court and unfiled discovery. *See Ballard*, 924 S.W.2d at 658–59 (citing Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Court*, 105 HARV. L.REV. 427 (Dec. 1991)). We conclude from this that unfiled discovery documents are not considered public or judicial records.

Against this backdrop, then, we consider the particular issues raised by *The Tennessean* on appeal.

### Proposed Rule 1A

With regard to all of the issues surrounding the disclosure of documents, both filed and unfiled, *The Tennessean* asks this

Court to adopt the standards similar to those set forth in a new Rule of Civil Procedure, Rule 1A, which was proposed by the Tennessee Supreme Court to the Tennessee General Assembly, and later withdrawn, apparently in light of concerns expressed about some of its provisions.[11] The proposed Rule 1A framework that *The Tennessean* urges us to adopt is a significant departure from the current rules of civil procedure, and adopting it would essentially constitute a reformation of Rule 26.03.

■ As noted in the amicus brief filed by the Tennessee Bar Association in this appeal, *The Tennessean's* request that we in essence adopt proposed Rule 1A "bypasses a well-established procedure for adoption of rules for practice in all courts." The Tennessee legislature has given the Supreme Court "the power to prescribe by general rules the forms of process, writs, pleadings and motions, and the practice and procedure in all of the courts of this state." Tenn.Code Ann. § 16–3–402 (1994). Such rules cannot become effective unless approved by the legislature. *See State v. Ellis,* 598 S.W.2d 826, 827 (Tenn.Crim.App.1980). The Supreme Court of Tennessee has noted that it "ill-

---

11. *The Tennessean* proposes that we adopt the following provisions in proposed Rule 1A:

*Standard for Sealing Court Records:* Court orders and opinions issued in the adjudication of cases, and court records, as defined below, are presumed to be open to the general public and may be sealed only upon a showing of all of the following:

(a) a specific, serious and substantial interest that clearly outweighs:

(1) this presumption of openness; and

(2) any probable adverse effect that sealing will have upon the general public health or safety;

(b) no less restrictive means that sealing records will adequately and effectively protect the specific interest asserted.

*Court Records Defined:* Court records are defined as:

(a) all documents of any nature filed in connection with any matter before any civil court, except:

(1) documents filed with a court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents;

(2) documents in court files to which access is otherwise restricted by law; or

(3) documents and other matters subject to a protective order issued pursuant to Rule 26.03(7) of the Tennessee Rules of Civil Procedure or to maintain the privacy of financial information of individuals or closely-held, non-public entities such as partnerships, limited partnerships, subchapter s corporations, limited liability companies or limited liability partnerships.

The proposed rule also includes procedures for public notice, public hearings, temporary seals, and other related issues. The Tennessee Bar Association notes in its appellate brief that the version of Rule 1A proposed to the Supreme Court by the Advisory Commission also included the following subsections, describing two other categories of "court documents:"

(b) settlement agreements not filed of record, excluding all reference to any monetary consideration, that seek to restrict disclosure of information concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government.

(c) discovery, not filed of record that is related to a commenced civil action or that has been obtained pursuant to Tennessee Rules of Civil Procedure 27, concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government, except discovery in cases originally initiated to preserve bona fide trade secrets or other intangible property rights.

These provisions are not included in the version urged by *The Tennessean* in this appeal. Furthermore, *The Tennessean's* proposal did not contain the following language in subsection (a)(3): "or closely-held, non-public entities such as partnerships, limited partnerships, subchapters corporations, limited liability companies or limited liability partnerships."

behooves any court, particularly an appellate court, to denigrate [the rules of civil, criminal, or appellate procedure] galvanized into law by joint judicial and legislative action." *DHS v. Vaughn,* 595 S.W.2d 62, 63 (Tenn.1980). This Court does not have the authority to effectively adopt a new rule of civil procedure through its judicial decisions. *See State v. Singleton,* 853 S.W.2d 490, 492–96 (Tenn.1993); *State v. Best,* 614 S.W.2d 791, 793 (Tenn.1981).

Whatever the merits of the Rule proposed, and later withdrawn, by the Tennessee Supreme Court, and whatever the merits of the similar rule suggested by *The Tennessean* in this appeal, we decline to in essence "adopt" proposed Rule 1A by a wholesale endorsement of its provisions in this Opinion. We go on, then, to address the specific issues raised by *The Tennessean* under the law as it currently exists.

### Orders at Issue

The parties acknowledge that judicial records and unfiled discovery are treated differently, so we analyze them separately.

***Judicial Records***

In this appeal, *The Tennessean* challenges the protocols established in the trial court's July 10, 2006 order addressing documents to be filed in the future, especially with respect to the Plaintiffs' response to NHC's motion for partial summary judgment. By requiring that all future filings be initially made under seal, *The Tennessean* contends, the trial court abdicated its responsibility to make a document-by-document determination regarding whether a compelling interest outweighed the public's constitutional right to access court records. *The Tennessean* maintains that "[n]othing should have been filed under seal without the court first making a determination that a compelling interest required secrecy." In addition, *The Tennessean* argues that the trial court erred in waiting until after it ruled on NHC's motion for partial summary judgment before addressing whether to unseal the discovery documents filed in connection with the motion. The timeline of events, *The Tennessean* claims, so delayed its access to the documents filed in connection with the motion for summary judgment that the newspaper was essentially denied access.[12] In sum, *The Tennessean* argues that "public access delayed is public access denied." It asserts that the trial court's decision should be deemed in error, and all documents filed with the trial court should be unsealed. The issue, then, is whether the procedure utilized by the trial court amounted to an effective denial of *The Tennessean's* right to access judicial records.

*The Tennessean* rightly emphasizes that the sealed documents were filed in connection with a dispositive motion. A number of courts have determined that sealing documents filed in connection with a dispositive motion requires a compelling reason. *See Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006); *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252 (4th Cir.1988); *Dreiling v. Jain,* 151 Wash.2d 900, 93 P.3d 861, 867 (2004). This is "because the resolution of a dispute on the merits, whether

---

12. NHC contends that, because the trial court's ultimate decision was largely in *The Tennessean's* favor, "any arguments regarding restrictions on public access to judicial records prior to the December 20, 2006 order, therefore, are now moot." This case presents important public issues capable of repetition yet evading review. *See State v. Drake,* 701 S.W.2d 604, 609 (Tenn.1985). Moreover, NHC's argument fails to recognize the newspaper's legitimate interest in timely reporting of events. Therefore, NHC's contention is without merit.

by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.' " *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir.1986)).

■ Moreover, the court must consider whether the information sought to be shielded from public view is "important to public health and safety." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995); *see also Brown & Williamson Tobacco v. FTC*, 710 F.2d 1165,1180 (6th Cir.1983). Here, of course, the subject matter of the litigation related to public health and safety, because it arose out of a nursing home fire that resulted in multiple deaths.

The authority cited by *The Tennessean* underscores that there must be a compelling reason to seal judicial records filed in connection with a dispositive motion, especially on an issue of public safety, and that the burden for showing such a compelling reason is on the party who seeks to prevent public access to the public records. Does this preclude the trial court from establishing a procedure whereby the documents filed are initially placed under seal, with a subsequent hearing to address whether the seal should remain on the individual documents?

While *Ballard* is distinguishable in that it involved filed raw discovery rather than documents filed in connection with a dispositive motion, we must note that the procedure adopted by the trial court below mirrors the procedure described in *Ballard*. The *Ballard* court clearly contemplated the need at times for a "blanket" protective order. It described the procedure for modifying such an order:

The appropriate procedure, following delivery of documents under a blanket protective order is to allow the party seeking to maintain confidentiality an opportunity to indicate precisely which documents are allegedly confidential.

\* \* \*

When modification of a blanket protective order is sought, the party seeking to maintain confidentiality must designate the documents alleged to be confidential and then establish that good cause exists with respect to those documents.

*Id.* This is precisely the procedure outlined in the trial court's July 10, 2006 order.

Furthermore, at the time that the trial court entered its July 10, 2006 order, the parties had produced over 25,000 documents in discovery, had taken over 100 depositions, and had submitted over 35,000 documents to the court in connection with the *in camera* inspection of unfiled discovery.[13] At that point, NHC had already filed its motion for partial summary judgment, and the trial judge had no way of knowing how many documents would be filed by the Plaintiffs to support their response to NHC's motion. We are mindful that "[t]he smooth functioning of the pretrial process should not be impaired by subjecting pretrial management to cumbersome or repeated First Amendment review." Miller, 105 HARV. L. REV. at 441.

We agree with *The Tennessean* that, ideally, the determination of whether documents will be filed under seal is made at the time of filing or before. We also recognize the newspaper's legitimate interest in timely access to judicial records. However, in this case, in light of the number of documents that potentially could have been filed, we cannot say that the trial court abused its discretion by establishing a pro-

**13.** This was the estimate of counsel for NHC at the oral argument in this appeal. From our review of the appellate record, we suspect that this estimate is conservative.

tocol under which documents were initially filed under seal, with a procedure for promptly receiving and resolving objections to unsealing the specific documents.[14]

Likewise, we find no error in the trial court's decision to resolve the motion for partial summary judgment before addressing the objections to unsealing the documents filed in connection with the motion. The appellate brief filed by *The Tennessean* states that "[t]he Plaintiffs' response included 78 depositions, 15 exhibits, memoranda in opposition to the Defendants' motion for summary judgment, Plaintiffs' statement of undisputed facts, and 21 affidavits." Without minimizing the importance of public access to judicial records, we must not lose sight of the "primary goal" of the judicial system, that is, "providing citizens an effective truth-seeking procedure for resolving their disputes without impairing their other rights." Miller, 105 Harv. L. Rev. at 432. Given the number of documents for the trial court to review in a document-by-document consideration of objections to unsealing, we cannot say that the trial court abused its discretion by addressing the merits of the summary judgment motion before resolving the public access issues.

*The Tennessean* also contends that the time period for the trial court to consider and rule on NHC's asserted "good cause" for maintaining the confidentiality of specified filed documents resulted in an effective deprivation of its rights to access the documents. We look, then, at the timeline. As noted above, on September 1, 2006, the Plaintiffs filed a response to NHC's summary judgment motion. The response attached thousands of pages of depositions, exhibits, affidavits, and memoranda. On October 9, 2006, NHC filed its objections to unsealing some of the discovery documents submitted by the Plaintiffs.

On October 20, 2006, the trial judge held the hearing at which she announced that she was granting the summary judgment motion in part and denying it in part. The transcript indicates that counsel for the Plaintiffs, for NHC, and for *The Tennessean* were all present. After announcing the ruling on the summary judgment motion, the trial judge asked the attorneys whether they wanted to proceed on hearing NHC's objections as to unsealing the documents; the Plaintiffs requested time to consider the summary judgment ruling and to prepare responses to NHC's disclosure objections. The trial judge then asked the attorneys to draft an order reflecting the ruling on the summary judgment motion and setting a date for a later hearing.[15]

14. The Sedona Working Group Guidelines suggest a procedure for making the determination on sealing when the documents are initially submitted. This procedure would be applicable to courts that permit documents to be "lodged":

> The court may permit the party to "lodge" the document with the court (a step short of filing the document) and file the appropriate motion to have the document sealed upon filing. Under such a procedure, the court and opposing parties have access to the document while the motion is under consideration, and the public has notice of the pending motion to file the document

under seal, but the document has not been made public through filing.

If the motion to seal the document is denied, the document is returned to the party unfiled. The Sedona Guidelines: Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases at 18–19 (Mar. 2007), available at http://www.thesedonaconference.org/dltForm?did=3_07WG2.pdf.

15. At the October 20, 2006 hearing, the trial judge commented on the documents that were filed: "[I]t's going to take the Clerk's Office and our office awhile to get it organized. We have hundreds of boxes of material."

The result was the November 7, 2006 order, which set forth the ruling on NHC's motion for partial summary judgment and set a hearing for NHC's objections to unsealing specified documents. Not long thereafter, on December 4, 2006, the Plaintiffs settled the remaining two cases with NHC. On December 8, 2006, the trial court held its hearing on NHC's objections to unsealing the filed discovery documents, and on December 20, 2006, the order unsealing most of the filed documents was entered.

All told, from the time the Plaintiffs filed the responsive documents under seal on September 1, 2006, to the date of the trial court's order unsealing most of those documents, less than four months elapsed. *The Tennessean* argues that this amount of time effectively denied the newspaper its right of access.

*The Tennessean*, understandably, views the circumstances through its own prism, focused on the imperative of the media to obtain and report information to the public as quickly as possible. We are obliged to take a broader view, considering the issue of the newspaper's access to the documents in the context of the overall litigation and, indeed, in view of the trial judge's multiple obligations and responsibilities. The litigation initially involved numerous parties and attorneys, and required solid management to control the parties, the avalanche of documents, and the trial proceedings. The protocols established by the trial court for assessing whether the filed discovery materials should be kept under seal were pragmatic and designed to afford the trial court the opportunity to give meaningful attention to each decision and each party's position.

Moreover, given the mammoth number of documents at issue, the document-by-document examination described in *Ballard* and sought by *The Tennessean* demanded substantial time.[16] We recognize that judicial resources are limited, and that, under these facts, the issues presented to the court had to be decided by the trial judge alone. Finally, we are mindful that *In re: Nashville Fire Litigation* was not the only matter on the trial court's docket.

The prioritizing required to balance all of these competing interests must be committed to the sound discretion of the trial judge. Given all of the circumstances, we find no abuse of that discretion in the trial court's decision to (1) issue a blanket protective order and then hear objections to unsealing specific filed documents, and (2) decide the merits of the pending motion for partial summary judgment before hearing the objections on unsealing the filed documents. In view of the complexity of the case, the sheer volume of documents involved, and the overall circumstances, the time span from the filing of the documents to the ruling reflects prodigious efforts by the trial judge and did not amount to a denial of access to *The Tennessean* or an abuse of discretion by the trial judge.

It is unclear whether *The Tennessean*, on appeal, seeks access to the few documents that remain filed under seal. We find no abuse of discretion in the trial court's decision to leave those documents under seal.

### Unfiled Discovery

*The Tennessean* does not contest the trial court's original agreed blanket protective order prohibiting disclosure of unfiled

---

**16.** In response to Plaintiffs' counsel's expressed desire to "move forward in this case like you would any other case," the trial judge fairly retorted that "[t]his case is not like any other case. It's never going to be."

discovery documents, issued well prior to the newspaper's intervention into the consolidated lawsuits.[17] However, as to unfiled discovery, *The Tennessean* argues that, after its intervention into the proceedings, the trial court abused its discretion by denying the newspaper's motion to lift the blanket protective order on unfiled discovery without stating its reasons or expressly finding good cause for continuing the order, and in waiting nearly a year before finally resolving the newspaper's motion to lift or modify the blanket protective order. We consider the protective order on unfiled discovery.

As noted by *The Tennessean*, the *Ballard* court stated that Rule 26.03 requires the party seeking closure to establish good cause:

> [T]he moving party must show that disclosure will result in a clearly defined injury to the party seeking closure. "Broad, allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not amount to a showing of good cause. Mere conclusory allegations are insufficient.

*Ballard*, 924 S.W.2d at 658 (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)). The Ballard court cautioned, "To facilitate effective appellate review, trial courts should articulate on the record findings supporting its decision."

*Id.* The same procedure is followed when a party moves to modify an existing protective order. *Id.* at 660. As we discussed above, however, the holding in *Ballard* was rendered with respect to filed discovery, *i.e.*, judicial records. What is the applicable standard for the motions filed in this case to lift the blanket protective order on unfiled discovery?

Although *The Tennessean* acknowledges that it has "no constitutional right of access to raw discovery," it asserts that (1) NHC was required to show specific potential injury as to each document, (2) the trial court was required to do a document-by-document review, and (3) the trial court was required to issue express "good cause" findings on each unfiled discovery document. The newspaper cites *Ballard* in support of this assertion.

We do not read *Ballard* as entirely supporting this contention. First, as noted above, the *Ballard* holding was rendered as to *filed* discovery documents, which are considered judicial records. In contrast, unfiled discovery documents are not considered to be public or judicial records. Moreover, in its analysis, the *Ballard* court repeatedly cited favorably Professor Miller's article, cited herein, which argues forcefully that the adoption of rules creating a presumption of public access to unfiled discovery[18] would result in abuse and

---

**17.** Nevertheless, *The Tennessean* comments that the consent blanket protective orders "reveal the trial court's willingness to seal judicial records based only upon the agreement of the parties, or *sua sponte* . . . ."

**18.** Professor Miller cites in particular cases from a few states that adopted rules similar to proposed Rule 1A, advocated by *The Tennessean* in this appeal. Citing rules which designate as "court records" unfiled discovery that implicates public health and safety concerns, he cautions:

> [B]efore we rush sheeplike down the path chosen by Texas, Florida, and Virginia and

create anything in the nature of a presumption of public access, we must . . . determine whether a problem exists. Certainly, no evidence has emerged to date that comes close to justifying the fundamental changes in the process sought by those advocating them, especially when the negative effects of these changes would be felt in the vast majority of civil cases, which have nothing to do with public health or safety.

105 HARV. L.REV. at 501–02. However, the version of Rule 1A urged by *The Tennessean* does not include the specific provisions to which Professor Miller objects. *See, supra*, n. 11.

cause damage to "litigants, the civil justice system, and society as a whole." [19] *Id.* at 658–59 (citing Miller, 105 Harv. L. Rev. at 463). For these reasons, we do not believe that *Ballard* recognized a presumptive right of public access to unfiled discovery.

*The Tennessean* cites no other Tennessee case purportedly finding that an intervenor such as a media representative has a presumptive right of access under Rule 26.03 to unfiled discovery. We likewise have found none.

The majority of courts interpreting the federal counterpart of Rule 26.03 or the comparable rule in other states do not read into the rule a presumption of public access to unfiled discovery.[20] *See, e.g., Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1312 n. 10 (11th Cir.2001); *see also Estate of Frankl v. Goodyear Tire & Rubber Co.,* 181 N.J. 1,

853 A.2d 880, 886–87 (2004) ("The universal understanding in the legal community is that unfiled documents in discovery are not subject to public access.").[21]

■ Under Rule 26.03, then, does the newspaper have a presumptive right of access to unfiled discovery? By analogy, *The Tennessean* unquestionably has a presumptive right to be present to hear testimony by a witness in court. Not so if the witness is testifying in a pretrial deposition. *See Rhinehart,* 467 U.S. at 33 n. 19, 104 S.Ct. 2199. Likewise, *The Tennessean* has a presumptive right of access to documents filed in court, particularly documents filed in connection with a dispositive motion. However, while there are valid reasons for and against finding a presumptive right of public access to unfiled discovery,[22] on balance, we are unwilling to hold

19. Professor Miller contends that creating a presumption of public access to unfiled discovery materials and restricting the trial judge's ability to implement protective orders would undermine the privacy of litigants forced to disgorge private information in response to broad discovery requests, jeopardize property interests of businesses in confidential information such as trade secrets and financial data, make the discovery process more contentious, protracted, and expensive, undermine efforts to promote settlement of cases, and overwhelm trial judges who would be forced to examine the masses of unfiled discovery materials generated in complex litigation. Miller, 105 Harv. L.Rev. at 463–502.

20. "[T]he majority of courts, both state and federal, do not recognize a public right of access to materials that parties exchange in discovery but do not file with the court." Andrew D. Goldstein, *Sealing and Revealing: Rethinking the Rules Governing Public Access to Information Generated Through Litigation,* 81 Chicago-Kent L.Rev. 375, 376 (2006).

21. The Ninth Circuit is apparently an exception. *See, e.g., Phillips v. General Motors Corp.,* 307 F.3d 1206, 1210 (9th Cir.2002), which was decided after the 2000 amendment to Fed.R.Civ.P. 5(d) providing that pretrial discovery will no longer be filed with the

federal district courts unless "used in the action."

22. For an in-depth discussion of the competing views on this topic, see the Chicago–Kent Law Review Symposium: Secrecy in Litigation, 81 Chicago-Kent L. Rev (2006).

Arguing against public access, one commentator confesses to "feeling like the Grinch," but nevertheless advocates putting aside the "persistent public access myth" that a goal of the rules of civil procedure was public access to the fruits of discovery. *See* Richard L. Marcus, *A Modest Proposal: Recognizing (At Last) That the Federal Rules Do Not Declare That Discovery is Presumptively Public,* 81 Chicago-Kent L.Rev. 331, 344–45 (2006). Professor Marcus comments on "E–Discovery," seeking electronically stored information in discovery. He observes that "[s]ome major cases now involve one terabyte of information, which, if printed to paper, would fill the Sears Tower four times," and noted other cases in which discovery included "all information that can be exhumed from a computer hard drive by forensic techniques," asking rhetorically: "Would anyone really contend that ... all that information is presumptively public?" *Id.* at 343, 355; *see also* Howard M. Erichson, *Court–Ordered Confi-*

that *The Tennessean* has a presumptive right of public access to unfiled discovery under Rule 26.03.

 If *The Tennessean* has no presumptive right of access to unfiled discovery, the Tennessee Hospital Association argues in its amicus brief that the newspaper simply does not have standing to seek modification of the blanket protective order. We disagree.

 Absent an agreement between the parties or a protective order, "parties to a lawsuit may disseminate materials obtained during discovery as they see fit." [23] *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Thus, a party such as Metro in this cause had a presumptive right to choose to disclose information accessed through discovery, had there been no blanket protective order.[24] If a party to the litigation seeks to have the trial court lift a protective order on unfiled discovery, the trial

court must find good cause to justify maintaining the order.[25]

 *The Tennessean*, as a permissive intervenor, is in a somewhat different position from an original party and has a distinct, though related, interest.[26] The newspaper's interest is in its ability to ask a party to give it access to the unfiled discovery, without the obstacle of having a protective order in place prohibiting such disclosure. While this is a less-weighty interest than its presumptive right to judicial records, it is nevertheless a legitimate interest. "[T]he lack of a public right to demand access to unfiled discovery materials does not render meaningless a nonparty's challenge to a protective order's validity." Howard M. Erichson, Court–Ordered Confidentiality in Discovery, 81 CHICAGO–KENT L. REV. 357, 368 (2006). Most courts have held that a third party such as a media representative or public interest group has standing to intervene for the limited purpose of challenging a

*dentiality in Discovery,* 81 CHICAGO-KENT L.REV. 357 (2006).

Arguing in favor of a presumptive right of public access to discovery, Professor Andrew Goldstein "asks whether courts, scholars, and policymakers should reconsider the tenet that discovery is not subject to public access." *See* Andrew D. Goldstein, *Sealing and Revealing: Rethinking the Rules Governing Public Access to Information Generated Through Litigation,* 81 CHICAGO-KENT L. REV. 375, 378 (2006). He cites "[n]ews reports describing how the Catholic archdioceses had secretly settled dozens of lawsuits in cases involving priests who allegedly molested children and how Firestone and Ford were able to hide the Ford Explorer's rollover problems by settling scores of lawsuits with strict confidentiality clauses." *Id.* at 377. He notes that the parties in such cases are "able to use secrecy as a bargaining chip during settlement negotiations," permitting "bad actors" to "buy[ ] secrecy from this opponents in the form of a large settlement offer," and giving plaintiffs "perverse incentives to file suit" by allowing them "to sell what they learn in discovery." *Id.* at 379, 404, 405.

23. The extent to which this right involves the First Amendment appears limited. *See Rhinehart,* 467 U.S. at 34, 104 S.Ct. 2199 ("In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on information in a different context.").

24. Metro was made a party to the litigation after the other parties had agreed to the entry of the blanket protective order.

25. As to unfiled discovery, however, it does not require "exacting First Amendment scrutiny" or a compelling reason. *Rhinehart,* 467 U.S. at 33, 104 S.Ct. 2199.

26. "[T]he permissive intervenor fall[s] somewhere in the gray area between spectator and participant.... [T]he intervenor's mere presence in an action does not clothe it with the status of an original party." *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 675 (5th Cir.1985).

protective order, provided the prospective intervenor asserts that the public interest is served by disclosure.[27] Therefore, we reject the Hospital Association's assertion and find that *The Tennessean* has standing to assert its legitimate interest in asking the parties to share unfiled documents obtained through discovery, in the public interest.

Does this mean that *The Tennessean* was entitled under *Ballard* to have the trial judge conduct a page-by-page review of the unfiled discovery documents and issue an express finding that disclosure of each page would result in "clearly defined injury" to NHC? Without question, Rule 26.03 requires a "good cause" finding to issue or maintain a protective order, regardless of whether the protective order is opposed by an original party or an intervenor. "What constitutes good cause, however, necessarily depends on the extent to which courts have reason to resist granting the [protective] order." Erichson, 81 CHICAGO-KENT L. REV. at 360–61. Had NHC been seeking, for example, to shield the documents from an original party to the litigation, substantial good cause would have to be shown. Here, where *The Tennessean's* only interest is in asking the original parties to disclose tens of thousands of pages of documents that may never be used in the litigation, a "relatively light" standard for the required good

cause showing is more appropriate. *Id.* In the context of a protective order on unfiled discovery, "the good cause standard generally should be considered to be satisfied as long as the parties can articulate a legitimate need for privacy or confidentiality. . . ." SEDONA GUIDELINES, *supra* n. 14, at 7. If a protective order is challenged, the good-cause determination is based on the circumstances that exist at the time of the challenge. *Id.* at 8. "The relative strength of the public's interest in access versus a litigant's interest in privacy, property or confidentiality evolves with the stage of litigation. . . ." *Id.* at p. 3.

Moreover, with respect to complex litigation that spawns an enormous volume of unfiled discovery materials, it is neither practical nor realistic to require the trial judge to conduct a page-by-page document review:[28]

> Because of the limited scope and provisional nature of the umbrella protective order, the court need not conduct a detailed inquiry into the nature of the information at issue, which courts are sometimes unwilling or often practically unable to do, where much or all of the information at issue may not be used in connection with the determination of the merits of the dispute.

\*　　　\*　　　\*

**27.** THE SEDONA GUIDELINES, *supra* n. 14, at 11 (citing *Grove Fresh Distributors v. Everfresh Juice Co.*, 24 F.3d 893, 896(7th Cir.1994); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir.1994)). Here, the public interest involves safety in nursing homes. We do not address a situation in which media intervention serves only voyeuristic purposes, as in litigation involving a celebrity, or in which the third party seeks to further its own interests, such as seeking access to discovery information in the hopes of utilizing it for profit:

> While in the past, the likelihood that an individual or business would go to the effort

of using court files to access personal information for private gain was remote, the automation of [electronic] records has made the harvesting of personal information for commercial use a viable, and indeed quite profitable business.

SEDONA GUIDELINES, *supra* n. 14, at 3.

**28.** "It is unrealistic to ask our judges to examine the masses of discovery materials generated in contemporary litigation to rule on access requests." Miller, 105 HARV. L. REV. at 488.

Particularly in cases with large quantities of material to be produced in discovery, a threshold showing of "good cause" over broad categories of material may be sufficient for the issuance of a protective order ... to facilitate the cooperative exchange of voluminous discovery. *Id.* at 8, 9. Moreover, the trial judge may legitimately factor into the good-cause determination the extent to which the protective order enhances the ability of the parties, and the trial judge, to focus on addressing the merits of the case either by dispositive motion or by trial, as well as better enabling the parties to settle the litigation. The primary function of the judicial system is to resolve private disputes, and "the public shares the parties' interest in a judicial system that can efficiently resolve disputes." [29] *Id.* at 7.

█ We must now apply these principles to the trial court's July 10, 2006 order denying *The Tennessean's* motion to lift or modify the blanket protective order on unfiled discovery. First, we find that, while the trial court was required to find good cause to maintain the protective order, it was not required to conduct a page-by-page review of the unfiled discovery and make detailed good cause findings as to each unfiled discovery document.

Second, in its July 10, 2006 order, the trial court made no express finding of good cause, and simply did not state its reasons for declining to lift the blanket protective order on unfiled discovery. However, from our review of the transcripts of the ongoing hearings on the protective orders, it is clear that the trial court was aware that the continued enforcement of the blanket protective order had to be justified by good cause. While express findings would certainly have "facilitated appellate review," the fact that the trial court's finding of good cause was implicit rather than express is not in and of itself reason for reversal of the July 10, 2006 order.

Turning to the issue of whether there was in fact good cause for maintaining the protective order, we are mindful of the circumstances as they existed in July 2006, when the trial court issued its order. With the blanket protective order in place, an expedited discovery schedule and intensive mediation efforts, 28 of the 32 cases had settled within a year after the fire. Tens of thousands of pages of discovery documents had been generated, and substantial unfiled discovery, such as government employee depositions, had been removed from the ambit of the protective order. After an interim in which the appeals on the motion to recuse were being resolved, discovery was completed, NHC had filed a motion for partial summary judgment, and the trial judge had reason to expect a substantial number of documents to be filed by the Plaintiffs in response.

In NHC's 145–page itemization of the thousands of pages of unfiled documents and discovery responses, submitted for the trial judge's *in camera* review, the objections to disclosure are listed in shorthand form, generally identifying one or more of the following: "employee identification," "patient identification," "irrelevant," "lack of foundation/speculative," or "unfairly prejudicial." As noted by *The Tennessean*, these give little indication of a "clearly defined injury" that could result from disclosure, and do not differentiate the documents in which the sensitive information

---

29. [W]hatever the value of disclosure, it should not obscure the strong public interest in, and policy objectives furthered by, promoting settlement.... Our civil justice system could not bear the increased burden that would accompany reducing the frequency of settlement or delaying the stage in the litigation at which settlement is achieved.

Miller, 105 HARV. L. REV. at 486.

could be redacted. This lack of specificity weighs in favor of disclosure, as does the fact that the subject matter of the litigation involved public safety.

However, from our review of the overall categories of unfiled discovery documents, references to sensitive information such as employee identification or patient information are replete, and disclosure could possibly result in embarrassment or harassment of patients, employees or others regarding purely private matters. It is clear from the discourse between the attorneys and the trial judge at the hearings that the trial court took seriously its obligation to consider the public interest. Moreover, the trial court had reason to believe that the blanket protective order had been instrumental in settling the majority of the claims and would promote settlement of the remaining ones. There was nothing to prevent *The Tennessean* from asking the trial court to reconsider lifting the blanket protective order, once the cases were resolved by settlement or otherwise.

While the good-cause showing as to the unfiled discovery cannot be characterized as compelling, we must heed the standard of review. The abuse of discretion standard is an exceedingly high standard of review. As the *Ballard* court recognized, "the trial court is in the best position to weigh fairly the competing needs and interests of the parties," and the appellate court "should not reverse for 'abuse of discretion' a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Ballard*, 924 S.W.2d at 661. Under all of

these circumstances, we cannot conclude that the trial court abused its discretion in its July 10, 2006 order denying *The Tennessean's* motion to lift the protective order.[30]

■ Finally, *The Tennessean* argues that the length of time that it took for the trial court to issue its ruling on the newspaper's motion to lift the protective order was an abuse of discretion as well. We must take into consideration the six-month interim for resolution of the appeals on the motion to recuse. In addition, during the pendency of the newspaper's motion, the trial court ordered the disclosure of substantial discovery, such as depositions of government employees, addressed the ongoing disputes relating to documents filed under seal, and had under consideration NHC's motion for partial summary judgment. Under all of these circumstances, we cannot conclude that the length of time for the trial court to rule on *The Tennessean's* motion amounted to an abuse of discretion.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Gannett Satellite Information Network, Inc., d/b/a *The Tennessean*, and its surety, for which execution may issue, if necessary.

---

30. We do not address whether our holding would have been different had the motion to lift the blanket protective order been renewed after all of the cases were settled, when the protective order was no longer useful to promote settlement or resolution of the lawsuit on its merits.