# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 14, 2011 Session

## PFIZER, INC. AND PHARMACIA CORP.

### v.

## REAGAN FARR, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

**An Appeal from the Chancery Court for Davidson County**
**Nos. 09-1945-II and 09-1946-II      Carol L. McCoy, Chancellor**

_____

**No. M2011-01359-COA-R10-CV - Filed June 22, 2012**

_____

This appeal involves the disqualification of an attorney and the denial of permission to appear *pro hac vice*. The plaintiff taxpayer corporations filed two lawsuits against Tennessee's Commissioner of Revenue for a refund of franchise and excise taxes. The Commissioner filed a motion to permit an out-of-state attorney to appear *pro hac vice* to assist in representing Tennessee's Attorney General in the taxpayers' lawsuits. The attorney to be admitted *pro hac vice* is a full-time in-house attorney with a quasi-governmental multistate tax policy entity. The plaintiff taxpayers objected, arguing that admission *pro hac vice* of the multistate tax entity's in-house attorney was tantamount to allowing the multistate tax entity to intervene in the lawsuits. The plaintiff taxpayers also argued that the attorney should be disqualified from representing the Commissioner because such representation would present an inherent conflict of interest and would give the attorney access to confidential taxpayer information. The trial court agreed with the plaintiff taxpayers. It denied the Commissioner's motion to admit the attorney *pro hac vice* and disqualified the attorney from representing the Commissioner in these proceedings. This Court granted the Commissioner's application for an extraordinary appeal. We reverse and remand the case for entry of an order granting permission for the attorney to appear on behalf of the Commissioner *pro hac vice*.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Chancery Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the Opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Robert E. Cooper, Jr., Attorney General & Reporter; Joseph F. Whalen, Associate Solicitor General; Charles L. Lewis, Deputy Attorney General; Brad H. Buchanan, Assistant Attorney General; and Talmage M. Watts, Assistant Attorney General, for the Respondent/Appellant Richard H. Roberts,[1] Commissioner of Revenue, State of Tennessee

Michael D. Sontag, Stephen J. Jasper, and Ashley N. Bassel, Nashville, Tennessee, for the Petitioners/Appellees Pfizer, Inc., and Pharmacia Corporation

Joseph F. Welborn, III, and Lauren P. Coble, Nashville, Tennessee, for *Amicus Curiae* The Council on State Taxation (COST) in support of Appellees

Brett R. Carter, Joseph W. Gibbs, and Patricia Moskal, Nashville, Tennessee, for *Amicus Curiae* Tennessee Chamber of Commerce & Industry in support of Appellees

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

**Introduction**

Petitioner/Appellee Pfizer, Inc., and Petitioner/Appellee Pharmacia Corporation, a wholly-owned subsidiary of Pfizer, Inc., are New York corporations qualified to do business in Tennessee. This consolidated appeal involves two nearly identical lawsuits for tax refunds, one filed by Pfizer, Inc., and the other filed by Pharmacia Corporation. For ease of discussion in this Opinion, we will refer to the two plaintiffs collectively as "Pfizer." As the lawsuits have been consolidated for purposes of appeal, we will generally refer to the consolidated cases in the singular, as the "lawsuit."

Pfizer is engaged in at least two businesses: (1) the pharmaceutical products business and (2) the consumer healthcare products business. On December 20, 2006, Pfizer sold its consumer healthcare products business and recognized a significant capital gain from the sale. In this Opinion, we refer to the consumer products division gain resulting from this sale as the "CPD gain."

---

[1]After this case was filed, Reagan Farr resigned as Tennessee's Commissioner of Revenue. Successor Richard H. Roberts was automatically substituted for Farr pursuant to Rule 25.04 of the Tennessee Rules of Civil Procedure.

**Lawsuit**

On October 9, 2009, Pfizer filed the lawsuit against Respondent/Appellee Reagan Farr, the Commissioner of Revenue for the State of Tennessee ("Commissioner"), seeking a refund of the franchise and excise taxes allegedly erroneously paid in the years 2006, 2007, and 2008. In Count One of the complaint, Pfizer asserted that it was entitled to a refund of the taxes it paid on the CPD gain because that gain should have been characterized as "nonbusiness earnings" under relevant Tennessee statutes and, as such, should have been allocated entirely outside the State of Tennessee. In Count Two, Pfizer alleged that the State of Tennessee is constitutionally barred from taxing the CPD gain because Pfizer's consumer products division was not part of the same unitary business as the other operations of Pfizer that were conducted in Tennessee. Alternatively, in Counts Three and Four of the complaint, Pfizer contended that the Commissioner abused his discretion in denying Pfizer's application for a variance from the standard apportionment formulas for its net earnings in order to more fairly and accurately represent the extent of Pfizer's activities in Tennessee for the tax years 2006 through 2008.[2] Pfizer also argued that the Commissioner's application of the standard apportionment formula was unconstitutional. Pfizer sought a total tax refund of approximately $125 million.

**Motion to Admit Counsel *Pro Hac Vice***

On February 23, 2011, as part of the response to Pfizer's lawsuit, the Commissioner filed a "Motion for Admission *Pro Hac Vice*" pursuant to Rule 19 of the Rules of the Supreme Court of the State of Tennessee ("Rule 19"),[3] seeking permission for attorney Bruce J. Fort

---

[2]Tax statutes contain standard apportionment formulas which are used to divide the earnings and net worth of a multistate taxpayer among the states in which the taxpayer operates, so that each state gets its appropriate share of taxes. Pfizer claimed that, under the standard apportionment formula set forth in Tennessee's franchise and excise tax statutes, the earnings and net worth of Pfizer apportioned to the State of Tennessee for each of the tax years at issue were grossly distorted. Pfizer alleged that the variance it had requested would have more properly sourced its sales to the locations where prescriptions were issued and where consumers actually purchased Pfizer's products.

[3]Rule 19 provides in pertinent part:

> A lawyer not licensed to practice law in Tennessee, licensed in another United States jurisdiction, and who resides outside Tennessee shall be permitted to appear pro hac vice, file pleadings, motions, briefs, and other papers and to fully participate in a particular proceeding before a trial or appellate court of Tennessee if the lawyer complies with the following conditions:

(continued...)

("Mr. Fort") to appear as co-counsel on behalf of the Commissioner in the lawsuit. Mr. Fort was employed as in-house counsel for the Multistate Tax Commission ("MTC"), a quasi-governmental multistate tax policy organization operated pursuant to the Multistate Tax Compact.[4]  The Commissioner's motion for permission for Mr. Fort to appear *pro hac vice*

---

[3](...continued)

    (a) A lawyer not licensed to practice law in Tennessee and who resides outside Tennessee is eligible for admission pro hac vice before a trial or appellate court of Tennessee:

        (1) if the lawyer is licensed, in good standing, and admitted to practice before the court of last resort in another state or territory of the United States or the District of Columbia in which the lawyer maintains a residence or an office for the practice of law;

        (2) if the lawyer is in good standing in all other jurisdictions in which the lawyer is licensed to practice law; and

        (3) if the lawyer has been retained by a client to appear in a particular proceeding pending before that court.

    (b) In its discretion, a trial or appellate court may, in a particular proceeding pending before it, deny a lawyer's motion to appear pro hac vice only where:

        (1) the applicant's conduct as a lawyer, including conduct in proceedings in Tennessee in which the applicant has appeared pro hac vice and conduct in other jurisdictions in which the lawyer has practiced, raises reasonable doubt that the lawyer will comply with the Tennessee Rules of Professional Conduct and other rules and law governing the conduct of lawyers who appear before the courts of Tennessee; or

        (2) the applicant has engaged in such frequent appearances as to constitute regular practice in this state.

    In any proceeding in which a court denies a lawyer's motion to appear pro hac vice, the court shall set forth findings of fact and conclusions of law that constitute the grounds for its action. In addition, the court shall send a copy of the order denying the motion to the Board of Professional Responsibility of the Supreme Court of Tennessee.

Tenn. Sup. Ct. Rule 19(a) - (b).

[4]The MTC is governed by and represents the policy interests of its member states.  The MTC was established by the Multistate Tax Compact, which became effective on August 4, 1967, in order to further the purposes of the Compact.  These purposes include facilitating the proper determination of the state tax liabilities of multistate taxpayers, promoting uniformity and compatibility in significant components of tax systems, facilitating taxpayer convenience and ease of compliance in tax administration, and avoiding duplicative

(continued...)

averred that Mr. Fort was licensed and in good standing in the State of New Mexico, and that the Governor of Tennessee had commissioned Mr. Fort to assist the Attorney General in this matter. In support of the motion, the Commissioner attached the affidavit of Mr. Fort, in which he stated that he is licensed in New Mexico, and he also attached a certificate of Mr. Fort's good standing issued by the Supreme Court of New Mexico. The Commissioner also submitted a November 29, 2010 letter from the Governor of Tennessee appointing Mr. Fort to assist the Attorney General's office in Pfizer's lawsuit. The letter stated that "the interest of the state requires the appointment of counsel to assist the Attorney General's office" in this litigation, and confirmed that Mr. Fort had "agreed to provide the requested legal services at no charge to the State of Tennessee."

On March 8, 2011, Pfizer filed a response to the Commissioner's motion for permission for Mr. Fort to appear *pro hac vice,* objecting to Mr. Fort's representation of the Commissioner. In its response, Pfizer acknowledged that the MTC often files *amicus curiae* briefs in state tax disputes across the country. Pfizer asserted, however, that allowing Mr. Fort to represent the Commissioner in its lawsuit was a step too far, that it would be tantamount to allowing the MTC to intervene in the lawsuit and would allow the MTC "to control and attempt to dictate the outcome of this case by effectively intervening in the case . . . ." Pfizer argued that the MTC should not be allowed to "shoehorn its way into this case by purporting to lend its in-house counsel free of charge to serve as 'co-counsel' for the [Commissioner] along with the Attorney General's office." Pfizer also argued that Mr. Fort's representation of the Commissioner was not authorized under Tennessee Code Annotated § 8-6-106, because the State was not paying Mr. Fort for his services.[5] In addition, Pfizer contended that permitting

---

[4](...continued)

taxation. Tennessee is not a fully-participating member of the MTC, but it is an associate member of the MTC.

[5]Section 8-6-106 provides:

> In all cases where the interest of the state requires, in the judgment of the governor and attorney general and reporter, additional counsel to the attorney general and reporter or district attorney general, the governor shall employ such counsel, who shall be paid such compensation for services as the governor, secretary of state, and attorney general and reporter may deem just, the same to be paid out of any money in the treasury not otherwise appropriated, upon the certificate of such officers certifying the amount to the commissioner of finance and administration. Notwithstanding any provision of this section or any other law to the contrary, the attorney general and reporter or district attorney general shall inform the governor of, and consideration shall be given to, whether the person or firm to be employed as additional counsel:

(continued...)

Mr. Fort to represent the Commissioner would create a clear and unavoidable conflict of interest because of Mr. Fort's loyalty to his employer, the MTC. Finally, Pfizer claimed that allowing Mr. Fort to serve as co-counsel for the Commissioner would give the MTC access to highly sensitive and confidential taxpayer information about Pfizer produced in the lawsuit, information to which the MTC would otherwise not have access. For all of these reasons, Pfizer argued that the trial court should deny the Commissioner's motion to admit Mr. Fort *pro hac vice*.[6] In its response to the Commissioner's motion to admit Mr. Fort *pro hac vice*, Pfizer did not expressly ask for disqualification of Mr. Fort; Pfizer also did not file a separate written motion to disqualify him.

On March 10, 2011, the Commissioner filed a reply, asserting that because Mr. Fort met the requirements of Tennessee Supreme Court Rule 19, his admission *pro hac vice* was mandatory. The Commissioner explained that he sought Mr. Fort as co-counsel in Pfizer's tax refund lawsuit because the case involves an unusually large refund and important principles in state taxation, and because Mr. Fort has extensive experience in multistate taxation. The Commissioner disputed Pfizer's assertion that Mr. Fort's admission *pro hac vice* would be tantamount to allowing the MTC to intervene, and he insisted that there were no ethical or legal impediments to Mr. Fort's representation of the Commissioner in Pfizer's lawsuit. The Commissioner pointed out that the Department of Revenue and the MTC were the only parties that could assert the conflict of interest that Pfizer alleged, and that those parties had mutually agreed to have Mr. Fort assist the Commissioner. In support of the Commissioner's reply, the Commissioner filed a supplemental affidavit by Mr. Fort, in which

---

[5](...continued)

> (1) To defend the state in any action is then serving as counsel for a party in any action by that party against the state and whether the action, if adjudicated in that party's favor, is likely to result in an increase in state expenditures; or
>
> (2) To prosecute any action on behalf of the state is then serving as counsel in defense of any action against the state.

Tenn. Code Ann. § 8-6-106 (2011).

[6]The Council on State Taxation ("COST") filed an *amicus curiae* brief with the trial court in support of Pfizer's position and in opposition to the Commissioner's motion to admit Mr. Fort *pro hac vice*. COST argued, among other things, that allowing Mr. Fort to assist in representing the State of Tennessee "would be virtually unprecedented and extremely troubling to COST and its members." Like Pfizer, COST claimed that permitting the *pro hac vice* admission of Mr. Fort would be tantamount to allowing the MTC to intervene, and would give the MTC "direct access to the discovery machine and the concomitant right to conduct depositions, issue discovery, argue motions, and engage in other activities that are normally reserved for actual parties."

he stated that his role as co-counsel for the Department of Revenue was "to provide technical advice and litigation assistance, and [it has been] made clear that [the Attorney General] will remain solely responsible for the 'direction and ultimate outcome of the case.'" Mr. Fort's supplemental affidavit further stated that he was "not aware of any reason to believe that the goals of the [MTC] conflict in any way with the goals of the State of Tennessee in this litigation." The supplemental affidavit also said that Mr. Fort's access to Pfizer's confidential information in the context of the lawsuit would not present an ethical problem, because his ethical obligations would prevent him from revealing to the MTC any confidential taxpayer information that he obtained in the course of the litigation.

## Trial Court's Decision

On March 14, 2011, the trial court conducted a hearing on the Commissioner's motion to admit Mr. Fort *pro hac vice*. The trial court first indicated its belief that the only issue before it was whether to give Mr. Fort permission to appear *pro hac vice*, and that disqualification of Mr. Fort was not an issue. Later in the hearing, the trial court surmised that Pfizer's opposition to the Commissioner's motion was, in effect, a motion to disqualify Mr. Fort from representing the Commissioner, rather than simply opposition to his admission *pro hac vice*. In the course of the hearing, the trial court asked counsel for the Commissioner why it was not sufficient for the MTC to participate by amicus brief, and why the Commissioner did not utilize another capable lawyer as co-counsel, such as a former Attorney General. Counsel for the Commissioner explained that the Department of Revenue particularly wanted the benefit of Mr. Fort's special expertise in the taxation of multistate entities in the discovery phase of Pfizer's lawsuit. The trial court noted that, from a policy standpoint, the MTC would have broader policy interests than the State of Tennessee, and it expressed concern that Mr. Fort's participation in the litigation would result in broader discovery and more discovery disputes.[7]

---

[7]The trial court stated:

> ... I don't know how Mr. Fort's participation benefits the Court to let another lawyer come in .... [F]or me, it makes it much broader as far as the scope of what I have to review and what I have to do. And to be real about it, that's a real concern for me. When you're [Mr. Buchanan for the Attorney General] here, I know you're trying to collect the tax. That's your goal. When Mr. Sontag [counsel for Pfizer] is here, I know what his goal is. He doesn't want to pay the tax. When Mr. Fort is here, I don't know what Mr. Fort's agenda is, because if it's just to collect the tax, then all this broad discovery that has been referenced I don't have to pay any attention to because you're [Mr. Buchanan] not focused as much as Mr. Fort is focused on what I would call the bigger issues.

After hearing the arguments of counsel, the trial court acknowledged that Mr. Fort is licensed in another state and is in good standing, and that his qualifications were not in question. It recognized that Mr. Fort's affidavit, submitted in support of the Commissioner's motion, stated that he was under no obligation to share with the MTC or another state any confidential information he learned in the course of the Pfizer litigation. Nevertheless, the trial court agreed with Pfizer's argument that Mr. Fort's representation of the Commissioner would create ethical issues related to actual conflicts of interest and competing loyalties. The trial court was concerned that Mr. Fort's participation would broaden the scope of the litigation. It was also concerned that Mr. Fort would not be able to maintain confidentiality with respect to taxpayer information obtained in the course of discovery in the lawsuit:

> The issues involved in multi-state taxation are extensive [and] complex . . . . I do not go so far as . . . to say that the interests of MTC are diametrically opposed to the interests of the State of Tennessee. . . . I don't think it's that dramatic. I think that it is more extensive than the interests of the State of Tennessee with regard to the MTC's broad goals and objectives. . . . Some of the interests of the State of Tennessee are subsumed into the broad goals and objectives of the MTC. [Public policy], however, is not the purpose of litigation . . . .
>
> [I]t should not be the goal of the litigation to emphasize that, and the Court finds that the direct participation of Mr. Fort in these proceedings as *pro hac vice* would raise, in the Court's mind, the issue of competing loyalties. The Court finds that the [*State v. Culbreath*, 30 S.W.3d 309 (Tenn. 2000),] decision does suggest that there are actual conflicts which caution the Court not to approve the *pro hac vice.*
>
> And the issue of confidentiality is one that makes it difficult for the Court to have confidence that the confidentiality to which either of these taxpayers are entitled would be protected by the Court. It is readily apparent that all the documentation that comes forward in discovery will be shared with Mr. Fort or whoever the Attorney General, in its position as counsel, finds appropriate and permissible to share it. The concern is the appearance of a representative whose concerns are much greater and the exposure that the employees and the operations of the taxpayers would be exposed to. And I don't know how to ensure that.
>
> So the Court respectfully declines to allow Mr. Fort to appear as *pro hac vice*. The Court does, however, welcome his participation as amicus, and he may do so in that capacity.

On March 29, 2011, the trial court entered a written order denying the Commissioner's motion for permission for Mr. Fort to appear *pro hac vice* and disqualifying Mr. Fort from

-8-

representing the Commissioner in Pfizer's tax refund lawsuit. In the order, the trial court first observed that the MTC would not be entitled to intervene in the case under Rule 24.01 or Rule 24.02 of the Tennessee Rules of Civil Procedure, and added: "To the extent that the pending Motion includes a request for the MTC's intervention in this case, it is DENIED." The trial court next denied the Commissioner's motion to admit Mr. Fort *pro hac vice* for the reasons stated its oral ruling, specifically citing ***State v. Culbreath***, 30 S.W.3d 309 (Tenn. 2000). The trial court's order stated:

> . . . Mr. Fort's employment as the full-time, in-house counsel for the MTC, his receipt of a salary from the MTC, and lack of any payment from the State of Tennessee for his representation of Defendant in this case, give rise to inherently competing loyalties and actual conflicts of interest that make his representation of Defendant improper.

The trial court also found that Mr. Fort's representation of the Commissioner would undermine Pfizer's expectation of confidential treatment of sensitive information that Pfizer would be required to produce in the lawsuit. For these same reasons, the trial court granted Pfizer's request to disqualify Mr. Fort from representing the Commissioner in Pfizer's lawsuit. The order reiterated that the MTC could participate in the proceedings as *amicus curiae* and file a brief in that capacity. The order concluded by ordering Mr. Fort to "cease and desist" representing the Commissioner.

Subsequently, as required under Rule 19, the trial court entered an order indicating that its March 29, 2011 order would be forwarded to the Board of Professional Responsibility of the Supreme Court of Tennessee.[8] At a later hearing, the trial court clarified that, although Rule 19 compelled the trial court to forward a copy of its order to the Board, the trial court "certainly did not find that[ ] Mr. Fort is anything other than a fine, qualified, upstanding tax lawyer, ethical in all regards."

On April 12, 2011, the Commissioner filed a motion to alter or amend the trial court's decision. The Commissioner said that, because Pfizer had never filed a motion to disqualify Mr. Fort, the Commissioner had not filed documents that would be pertinent to a disqualification decision prior to the previous hearing. Consequently, the Commissioner's motion to alter or amend attached several exhibits, including consent forms signed by the Commissioner and the MTC Executive Director, consenting to Mr. Fort's representation of

---

[8]Under Rule 19(b) of the Tennessee Supreme Court Rules, if a trial court denies a motion for permission to appear *pro hac vice*, "the trial court is directed to set forth findings of fact and conclusions of law that constitute the grounds for its action" and "send a copy of the order denying the motion to the Board of Professional Responsibility of the Supreme Court of Tennessee."

the Department of Revenue and waiving any conflicts. It also attached affidavits of employees in the Tennessee Department of Revenue, and the 1993 Federation of Tax Administrators Uniform Exchange of Information Agreement (the "Uniform Exchange of Information Agreement"), signed by the MTC and by state representatives, including Tennessee, in which the parties agreed to exchange information "to enhance and facilitate tax administration." The motion to alter or amend emphasized that both the Commissioner and the MTC had waived any potential conflicts and consented to Mr. Fort's representation, and that Pfizer was not the proper party to raise any such conflict. The Commissioner noted that the attachments to the motion to alter or amend showed that the MTC was often given access to confidential taxpayer information by member states, including Tennessee, for routine purposes such as the MTC's audit contract. Citing *In re Youngblood*, 895 S.W.2d 322 (Tenn. 1995), the Commissioner argued that Mr. Fort should not be disqualified based only on potential conflicts. Pfizer filed its opposition to the Commissioner's motion to alter or amend, contending that the trial court had already considered and rejected all of the arguments made by the Commissioner in the motion.

On May 20, 2011, the trial court conducted a hearing on the Commissioner's motion to alter or amend. The Commissioner emphasized its right to choose its counsel and the fact that any perceived conflicts between the MTC and the Department of Revenue had been expressly waived by both parties. As to the trial court's concern that Mr. Fort's participation would broaden discovery, the Commissioner noted that the basic rules of discovery protect parties against over-broad discovery. Pfizer contended that the Commissioner had cited nothing new to support the motion to alter or amend. It argued that granting Mr. Fort permission to represent the Commissioner would mean that the MTC would in effect be participating in Pfizer's lawsuit, making the procedures more "complicated." Pfizer's counsel asked rhetorically, "Why make it more confusing?"

After listening to the parties' arguments, the trial court acknowledged Mr. Fort to be "a very ethical individual, highly respected individual." However, it expressed concern that his background with the MTC might result in "a discovery process that might be much broader." The trial court commented: "I have serious concerns about the extent [of] discovery . . . and how much time that's going to consume on my part in trying to parse out if there are requests for limits on the amount of discovery, how much that's going to impose on [my] judicial resources . . . ." The trial court said that it had conducted its own research into the subject and had determined that *pro hac vice* admission was discretionary with the trial court, that "nobody has a right to co-counsel," and that "so long as it doesn't affect a substantial right,

the Court's discretion generally isn't considered abuse."[9]  The trial court identified factors relevant to its decision, including the availability of capable alternative counsel admitted to practice in the state, the nature and complexity of the litigation, the burden on the non-moving party if *pro hac vice* admission is allowed, and the prejudice to the moving party if the motion is denied.  Again quoting from its research, the trial court stated: " 'And paramount in all of this where the Court denies *pro hac vice* is the ability of the Court to maintain the orderly administration of justice,' and I have to tell you that really is one of the more overwhelming aspects of my decision to deny the request and to disqualify Mr. Fort, is my ability to maintain the orderly administration of justice."  Based on its original reasons as well as the additional reasons, the trial court denied the Commissioner's motion to alter or amend the order denying Mr. Fort permission to appear *pro hac vice* and disqualifying him from representing the Commissioner.  On June 2, 2011, the trial court entered a written order denying the motion to alter or amend.

The Commissioner filed an application for an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, appealing the orders entered on March 29, March 31, and June 2, 2011.[10]  On July 12, 2011, this Court granted the Commissioner's application for extraordinary appeal.[11]

### ISSUES ON APPEAL

On appeal, the Commissioner of Revenue argues that the trial court abused its discretion in denying his motion for permission for Mr. Fort to appear *pro hac vice* and in disqualifying Mr. Fort from representing the Commissioner in these proceedings.  The Commissioner points out that Mr. Fort met all of the conditions established in Tennessee Supreme Court Rule 19 for *pro hac vice* admission and has an unblemished ethical record, and he contends that permission to appear *pro hac vice* is essentially mandated if those conditions are met.  However, to the extent that other factors may be considered, the Commissioner further argues that Mr. Fort's representation presents no conflict of interest and that, even if it did, the conflict was waived in this case.  In addition, he argues that Mr. Fort's representation of the Department of Revenue does not present a unique concern over the confidentiality of Pfizer's

---

[9]Unfortunately, the trial court did not identify the authority from which it quoted and on which it based its analysis.

[10]Rule 19 of the Rules of the Tennessee Supreme Court provides specifically that a trial court's order denying a motion to appear *pro hac vice* pursuant to subsection (b) "may be appealed pursuant to Rule 10, Tenn. R. App. P."  Tenn. Sup. Ct. Rule 19(h).

[11]As we have indicated, the application was granted in both cases, and the cases were consolidated for purposes of appeal.

records, nor does it disrupt the orderly administration of justice. Therefore, the trial court's decision should be reversed, and Mr. Fort should be admitted to represent the Commissioner *pro hac vice* in this case.

In response, Pfizer argues that allowing Mr. Fort to represent the Commissioner would be tantamount to allowing the MTC to intervene in this case when it has no authority to do so. Furthermore, Pfizer argues, the trial court acted well within its discretion in denying Mr. Fort *pro hac vice* admission and in disqualifying him from representing the Commissioner when his representation of the Commissioner would create a conflict of interest and would give rise to significant concerns about the confidentiality of records that Pfizer will be compelled to produce during discovery.

As indicated by the way the Commissioner of Revenue has framed the issue raised in this appeal, the trial court's decision to deny *pro hac vice* admission to Mr. Fort and the decision to disqualify Mr. Fort from representing the Commissioner were somewhat conflated in the proceedings below. Although we perceive the pivotal issue to be the disqualification of Mr. Fort, we will also consider on appeal the denial of admission *pro hac vice*, as the trial court appeared to rely on essentially the same reasons for both.[12] Much of our analysis will discuss both in the same context.[13]

The standard of review in a Rule 10 extraordinary appeal is "the same standard that would have been applied to the issue(s) in an appeal as of right." ***Peck v. Tanner***, 181 S.W.3d 262, 265 (Tenn. 2005). The basis for the denial of the Commissioner's motion to admit Mr. Fort *pro hac vice* was the trial court's exercise of its discretion under Rule 19(b). Thus, we review that decision for an abuse of that discretion. An abuse of discretion exists when a court "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or

---

[12]We see disqualification as the pivotal issue because, as pointed out by the Commissioner in the trial court, absent disqualification, Mr. Fort could still provide substantial assistance to the Commissioner and have access to discovery even without the trial court's permission to appear *pro hac vice*.

[13]The grounds for denying *pro hac vice* admission and disqualifying counsel are based in the Tennessee Supreme Court Rules. An attorney may be disqualified from representing a client "if the representation involves a concurrent conflict of interest," pursuant to Tennessee Supreme Court Rule 8, Rules of Professional Conduct ("RPC") 1.7(a). By the same token, *pro hac vice* admission may be denied, in the trial court's discretion, where the attorney's conduct "raises reasonable doubt that the lawyer will comply with the Tennessee Rules of Professional Conduct and other rules and law governing the conduct of lawyers who appear before the courts of Tennessee." Rule 19(b). Therefore, although *pro hac vice* admission is generally granted when an attorney is licensed and is in good standing, conduct of the applicant that raises doubts about his ability to comply with Tennessee's ethical rules may serve as both a basis for disqualification and for denial of *pro hac vice* admission.

reasoning that cause[s] an injustice to the party complaining." **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting **State v. Shirley**, 6 S.W.3d 243, 247 (Tenn. 1999)).

"The standard for reviewing a trial court's disqualification of an attorney varies depending on the circumstances of the disqualification." **In re Conservatorship for Allen**, No. E2010-01625-COA-R10-CV, 2010 WL 5549037, at *6 (Tenn. Ct. App. Dec. 29, 2010) (citing **In re Ellis**, 822 S.W.2d 602, 606 (Tenn. Ct. App. 1991)). Often a disqualification order is reviewed on appeal for an abuse of the trial court's discretion. **Id.** However,

> [t]he same appellate deference is not appropriate when the facts are undisputed and the conduct at issue does not directly involve conduct in open court. Trial courts enjoy no particular functional advantage over appellate courts in formulating and applying the ethical principles governing the attorney-client relationship. Accordingly, we will review trial courts' decisions to disqualify a lawyer based on undisputed facts and conduct not taking place in court using Tenn. R. App. P. 13(d)'s standard of review.

**In re Ellis**, 822 S.W.2d at 606 (citations omitted). The trial court has broad responsibility for the conduct of the lawyers appearing before it; thus, the trial court's decisions concerning the conduct of the court's business are entitled to appellate deference. **Id.**

We note that the Council on State Taxation ("COST") and the Tennessee Chamber of Commerce & Industry ("Chamber of Commerce") both filed *amicus curiae* briefs in support of the position taken by Pfizer, arguing that the trial court's decision should be affirmed in all respects. These briefs have been considered in this appeal.

## ANALYSIS

### Intervention of the MTC

Initially, we must consider the trial court's holding that, to the extent that the MTC was seeking to intervene in this case through the participation of Mr. Fort, the request for intervention was denied. It is undisputed that the MTC filed no motion to intervene in this cause. We presume that the trial court's ruling was a response to Pfizer's argument below that allowing Mr. Fort to participate in these proceedings would amount to permitting the MTC to intervene.[14] Pfizer reprises that argument in this appeal, contending that Mr. Fort's

---

[14]The Commissioner does not argue that the MTC meets the requirements for permissive intervention under Rules 24.01 and 24.02 of the Tennessee Rules of Civil Procedure; rather, he argues that Mr. Fort's

(continued...)

representation of the Commissioner would be tantamount to allowing the MTC to intervene, because "Mr. Fort would join this lawsuit in his capacity as an agent of the MTC and as a conduit for the MTC's goals and objectives." Pfizer claims that, although Mr. Fort's ethical duty to represent the Commissioner should take precedence over his status as an MTC employee, this ideal is "simply a product of [the Commissioner's] wishful thinking," given the fact that the MTC would pay for Mr. Fort's services. In the amicus briefs, both COST and the Chamber of Commerce echo Pfizer's argument that allowing Mr. Fort to represent the Commissioner would be tantamount to allowing the MTC to intervene in this case, and they argue strenuously against permitting such intervention.

As no motion to intervene was made, the trial court's ruling on a non-existent motion is, of course, a nullity. The substantive argument that underlies the trial court's ruling appears to be the trial court's concern that MTC's goals and objectives would influence the course of the litigation if Mr. Fort were allowed to represent the Commissioner, and especially that it would broaden the discovery requested by the Commissioner, as well as concerns about the confidentiality of documents produced by Pfizer in discovery. These issues are addressed below.

## Pro Hac Vice

Permission for a lawyer licensed in another state to appear on behalf of a client in a Tennessee court, *i.e.* permission to appear *pro hac vice*, is governed by Rule 19 of the Rules of the Supreme Court of the State of Tennessee. ***See Bivins v. Hosp. Corp. of Am.***, 910 S.W.2d 441, 442-43 (Tenn. Ct. App. 1995). The Rule sets forth multifarious requirements for a lawyer to obtain permission to appear *pro hac vice*, including the completion of numerous forms, the payment of fees, and licensure in good standing in another state. It is undisputed in this appeal that Mr. Fort had filed all of the required paperwork, paid the required fee, and is licensed in good standing in his home state.

Nonetheless, as set forth in Rule 19(b)(1), a trial court retains discretion to deny a motion to appear *pro hac vice* under some circumstances:

> **(b)** In its discretion, a trial or appellate court may, in a particular proceeding pending before it, deny a lawyer's motion to appear *pro hac vice* only where:
>
> **(1)** The applicant's conduct as a lawyer, including conduct in proceedings in Tennessee in which the applicant has appeared *pro hac vice* and conduct in

---

[14](...continued)
representation of the Commissioner is not tantamount to intervention.

other jurisdictions in which the lawyer has practiced, raises reasonable doubt that the lawyer will comply with the Tennessee Rules of Professional Conduct and other rules and law governing the conduct of lawyers who appear before the courts of Tennessee . . . .

Tenn. Sup. Ct. Rule 19(b)(1).[15]

In the case at bar, it is undisputed that Mr. Fort did not engage in any "conduct" in Tennessee or elsewhere that raised ethical concerns. Indeed, both the trial court and Pfizer's counsel described Mr. Fort as highly ethical. On appeal, the Commissioner points out the directive language used in Rule 19, which states that a lawyer "shall" be permitted to appear *pro hac vice* if the enumerated requirements are met, and gives a trial court discretion to deny permission "only where" the lawyer's "conduct raises reasonable doubt" that the lawyer will comply with Tennessee's ethics rules governing attorneys. The Commissioner argues persuasively that, under the circumstances in this case, the trial court does not have discretion under Rule 19(b) to deny Mr. Fort's motion to appear *pro hac vice*. However, we need not address this argument because we conclude *infra* that the reasons given by the trial court support neither disqualification nor denial of the motion for permission for Mr. Fort to appear *pro hac vice*.

## Disqualification

This Court has cautioned that courts should be loath to deny a party the lawyer of his choice by disqualifying the lawyer:

> A trial court has a broad range of options available to insure that its proceedings are fair both in appearance and in fact. Disqualifying an attorney is the most drastic. It invariably causes delay, increases, costs, and deprives parties of counsel of their choice. Courts should, therefore, disqualify counsel with considerable reluctance and only where no practical alternative exists.

*In re Ellis*, 822 S.W.2d at 605 (internal citations omitted); *see also Whalley Dev. Corp. v. First Citizens Bancshares, Inc.*, 834 S.W.2d 328, 331-32 (Tenn. Ct. App. 1992) (noting that courts "should be reluctant to disqualify a litigant's counsel of choice and should grant disqualification motions sparingly"); *Caudill v. Foley*, M2000-01512-COA-R3-CV, 2001 WL 950179, at *3 (Tenn. Ct. App. Aug. 21, 2001) (noting that "[c]ourts should . . . disqualify

---

[15]Rule 19(b) also provides that a lawyer may be denied permission to appear *pro hac vice* if "the applicant has engaged in such frequent appearances as to constitute regular practice in this state." Rule19(b)(2). This provision is not at issue in this appeal.

counsel with considerable reluctance and only when no other practical alternative exists"). In this case, the trial court's reasons for disqualifying Mr. Fort fell into three categories: (1) perceived conflicts of interest arising from Mr. Fort's employment by the MTC, (2) disruption of the "orderly administration of justice," and (3) concerns about MTC's access, via Mr. Fort, to confidential information produced by Pfizer in discovery. We address each of these in turn.

### *Conflicts of Interest*

The trial court below held that Mr. Fort's representation of the Commissioner in this case "is improper and gives rise to actual conflicts of interest." It explained:

> . . . Mr. Fort's employment as the full-time, in-house counsel for the MTC, his receipt of a salary from the MTC, and lack of any payment from the State of Tennessee for his representation of [the Commissioner] in this case give rise to inherently competing loyalties and actual conflicts of interest that make his representation of [the Commissioner] improper. . . .
>
> [T]here is an inherent and unavoidable conflict of interest when counsel for a trade association or special interest group also purports to serve as counsel for the State, with such representation creating divided loyalties that may cause the counsel to consciously or unconsciously pursue the interests of the association or special interest group rather than the State and, thereby, prevent counsel from exercising independent professional judgment, free of compromising influences and loyalties, in his representation of the State. . . . [T]he Court finds the MTC's multi-state policy-focused goals to be broader than [the Commissioner's] interest in the proper determination of a single taxpayer's Tennessee tax liability at issue in this case and that Mr. Fort's employment by the MTC creates actual conflicts of interest and divided loyalties that would prevent him from representing the State free of those compromising influences and loyalties.

The trial court specifically relied on ***State v. Culbreath***, 30 S.W.3d 309 (Tenn. 2000), also cited by Pfizer in this appeal. On this basis, the trial court found that Mr. Fort's representation of the Commissioner would be contrary to Rule 8, Rules of Professional Conduct ("RPC") 1.7, of the Rules of the Supreme Court of the State of Tennessee.

The Rule of Professional Conduct cited by the trial court sets forth the general rule governing lawyers as to conflicts of interest:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. Rule 8, RPC 1.7(a) and (b). The comments to the Rule state that, ordinarily, "clients may consent to representation notwithstanding a conflict," and that "a government official or entity, like any other client, may waive a conflict of interest under this Rule." *Id.*, cmts. (14) and (19a). The comments also note that a "lawyer may be paid from a source other than the client . . . if the client . . . consents and if the arrangement does not compromise the lawyer's duty of loyalty to the client." *Id.*, cmt. (13).

On appeal, the Commissioner argues that there is no conflict of interest between Mr. Fort's representation of the Commissioner and his representation of the MTC as its full-time in-house attorney. He further asserts that the interests of the MTC and the interests of the Commissioner are aligned in this case. The Commissioner submitted to the trial court a statement signed by the Executive Director of the MTC stating that "participation by Mr. Fort as a counsel in the case on behalf of the State of Tennessee would not be inconsistent with the purposes and goals of the Commission." The Commissioner points out that both Pfizer and the trial court stated explicitly that the MTC could file an *amicus curiae* brief in the case, which would of course require the MTC to take a position on the issues in the case. The Commissioner observes that the State of Tennessee is fully competent to determine whether the MTC's position is consistent with that of Tennessee. Alternatively, the Commissioner argues, even if Mr. Fort's representation of both the MTC and the Commissioner resulted in

-17-

a conflict of interest, the Commissioner filed documentation in which both the MTC and the Commissioner – the only two parties impacted – waived any conflicts.

The Commissioner also notes that the Tennessee Supreme Court has expressly sanctioned arrangements whereby a lawyer is paid by a source other than the client, so long as there are not particular concrete facts that demonstrate an actual conflict of interest, citing *In re Youngblood*, 895 S.W.2d 322 (Tenn. 1995). In that case, the Court reviewed an ethics opinion of the Tennessee Board of Professional Responsibility ("BPR") which prohibited in-house counsel for insurance companies from representing insureds in court proceedings that arose out of the company's insurance policy.[16] *In re Youngblood*, 895 S.W.2d at 324. The BPR had opined that "[t]here are few cases where some question does not arise during the confidential conferences between the attorney and the client-insured . . . that *might* provide a conflict between the insured and the insurance carrier," and that the in-house insurance company attorney "will not be able to exercise independent judgment or preserve the confidences and secrets of the insured." *Id.* at 328 (emphasis in original). On appeal, the Supreme Court vacated the opinion of the BPR because it was based "upon the *potential* for conflict in the relationship of the employer-employee rather than particular facts which demonstrate there is, in fact, a conflict of interest." *Id.* at 330 (emphasis added). The Court explained: "The same loyalty is owed the client whether the attorney is employed and paid by the client, is a salaried employee of the insurer, or is an independent contractor engaged by the insurer." It emphasized that "[c]ompliance with the Code in all cases will be measured against the Code itself, rather than some variation of the 'outside counsel' practice." *Id.* at 328. In this case, as in *In re Youngblood,* the Commissioner argues that there is no evidence that an *actual* conflict of interest is created by Mr. Fort's representation of the Commissioner while being paid a salary by the MTC – there is at most a *potential* for conflict.

In response, Pfizer emphasizes the broad discretion of the trial court in disqualification and admission *pro hac vice*. It asserts that the "divided and inherently conflicting nature of [Mr. Fort's] dual loyalties is undeniable in light of the clearly divergent interests of the MTC and the State of Tennessee." As it did in the trial court below, Pfizer notes that the MTC pursues tax policy goals on behalf of its member states, while the Commissioner is concerned only with Tennessee's tax laws. Pfizer contends that "the MTC's and the [Commissioner's] positions directly conflict" with respect to the issues in Pfizer's lawsuit. As an example, Pfizer says that, in the lawsuit, it challenges the Commissioner's decision not to vary the standard statutory apportionment formula, and the MTC supports broader discretion for such

---

[16]*In re Youngblood* was decided under the Code of Professional Responsibility, the predecessor to the current RPC. As noted above, the comments to the current RPC are consistent with the ruling in *In re Youngblood*.

a variance than Tennessee law currently provides. Pfizer also says that the MTC and the Commissioner "take different approaches to the apportionment of income for purposes of calculating tax liability of multistate taxpayers." Thus, it says, the trial court's finding of actual conflicts of interest is supported in the record.

In the amicus briefs, both COST and the Chamber of Commerce likewise contend that Mr. Fort would have "competing duties of loyalty" in simultaneously representing the MTC and the Commissioner. They emphasize that the MTC's goals are "broad-based policy initiatives" while the Commissioner's are more narrow with a "fundamental difference in the functions" of both. Pfizer, COST, and the Chamber all cite *State v. Culbreath* on the issue of Mr. Fort's alleged conflicts of interest.

In this case, it is somewhat difficult to see how Pfizer has standing to assert an alleged conflict of interest between the Commissioner and Mr. Fort's employer. Pfizer is neither a client nor a former client of Mr. Fort, and it has not shown how it would be affected by any "divided loyalties" of Mr. Fort.[17] *See Crown v. Hawkins Co.*, 910 P.2d 786, 795 (Idaho Ct. App. 1996) ("Where the motion to disqualify comes not from a client or former client . . ., but from an opposing party, the matter should be reviewed with caution.").

But assuming, without deciding, that Pfizer has standing to assert a conflict of interest between the MTC and the Commissioner, we have difficulty seeing such a conflict in the appellate record in this case. The interests of the MTC and the Commissioner need not be identical in order to be harmonious. Pfizer asserts that there are "actual conflicts" between the MTC and the Commissioner, and refers to the "divided and inherently conflicting nature" of Mr. Fort's "dual loyalties." While the trial court made a finding of actual conflicts, the trial court's description of its perception is not consistent with a finding of actual conflicts of interest and loyalties. The trial court said that it did "not go so far as . . . to say that the interests of MTC are diametrically opposed to the interests of the State of Tennessee. . . . Some of the interests of the State of Tennessee are subsumed into the broad goals and objectives of the MTC." Respectfully, this does not sound like a conflict. The trial court's description sounds congruent with the Commissioner's repeated assertions that the goals and objectives of the MTC and the Department of Revenue in this case are "not inconsistent" and are "aligned."

On appeal, Pfizer cites two examples of alleged potential conflicts, and the Commissioner denies they are conflicts. We need not resolve the precise issues surrounding whether a

---

[17]Supreme Court Justice Antonin Scalia once reduced the doctrine of standing down to the question, "What's it to you?" Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U.L. Rev. 881, 882 (1983).

potential conflict of interest exists, because both the Commissioner and the MTC have stated on the record in this case that they are fully aware of the Commissioner's position in this litigation and that, if there are any conflicts, they are waived. Rule 8, RPC 1.7(b)(4), provides that, notwithstanding any concurrent conflict of interest, a lawyer may represent a client if "each affected client gives informed consent, confirmed in writing." Furthermore, the comments to RPC 1.7 state specifically that a "government official or entity, like any other client, may waive a conflict of interest under this Rule." Tenn. Sup. Ct. Rule 8, RPC 1.7, cmt. (19a). Certainly the Commissioner of Revenue of the State of Tennessee is capable of evaluating conflicts of interest that may arise from retaining a particular attorney and making the choice to waive any conflicts.

Pfizer insists that, despite the Commissioner's waiver of any conflicts, this issue is governed by the Tennessee Supreme Court's decision in *State v. Culbreath*, and that Mr. Fort would be confronted with the same conflicting loyalties that were present in *Culbreath*. Pfizer argues that *Culbreath* mandates disqualification of Mr. Fort and denial of the motion to admit him *pro hac vice* in this case, notwithstanding any waiver of conflicts by the Commissioner. We must respectfully disagree.

In *Culbreath*, the Shelby County District Attorney's office agreed to accept the assistance of an outside attorney, Larry Parrish ("Mr. Parrish"), in the prosecution of obscenity cases. Under an agreed arrangement, Mr. Parrish acted as a prosecutor for the District Attorney and was paid for his work on an hourly basis by "a private, special interest group," Citizens for Community Values, Inc. ("CCV"). *Culbreath*, 30 S.W.3d at 311. Under this arrangement, over the course of about eight months, Mr. Parrish accumulated over 2,400 hours in investigating sexually-oriented businesses, accruing a fee of $212,000 and expenses of over $34,000. *Id.* After nineteen months, Mr. Parrish had amassed over $100,000 in expenses and had received fees in excess of $400,000. *Id.* at 312.

The District Attorney, with Mr. Parrish and based on Mr. Parrish's investigation, sought criminal indictments against two defendants; they also filed civil lawsuits against the same defendants seeking injunctive relief. The criminal trial court found that Mr. Parrish's involvement in the prosecution of these cases and his "enormous" compensation from a private special interest group created a conflict of interest that mandated the disqualification of both Mr. Parrish and the District Attorney. *Id.* at 312. The District Attorney appealed, ultimately to the Tennessee Supreme Court.

On appeal, the Tennessee Supreme Court noted that Tennessee statutes permit the district attorney general to employ additional private counsel in a given matter. The *Culbreath* Court found, however, that the circumstances regarding Mr. Parrish gave rise to an actual conflict of interest. The *Culbreath* Court quoted a United States Supreme Court case that

emphasized the breadth of a prosecutor's discretion in matters such as "the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, . . . whether to enter into plea bargains . . ., and whether any individuals should be granted immunity." *Id.* at 316 (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987)).  The *Culbreath* Court stated: "In sum, . . . the point [is] that the foundation for the exercise of the vast prosecutorial discretion is freedom from conflict of interest and fidelity to the public interest."  *Id.*  In *Culbreath*, Mr. Parrish was being compensated on an hourly basis for his prosecutorial work by an advocacy group.  Under those circumstances, "the reality is that he acquired a direct financial interest in the duration and scope of the ongoing prosecution . . . [and] could not exercise his independent professional judgment free of 'compromising influences and loyalties.'" *Id.*  On this basis, the Court affirmed the trial court's disqualification of Mr. Parrish and of the Attorney General's office from the prosecution of the obscenity cases.

Pfizer argues that the reasoning in *Culbreath* governs the instant case, because while representing the Commissioner, Mr. Fort would be paid by an outside group with an interest in furthering certain policies on the taxation of multistate entities.  However, similar facts were present in *In re Youngblood*, in which the attorney representing the insured was an in-house attorney for an insurance company with interests that differed somewhat from those of the insured.  This arrangement was specifically approved, in the absence of demonstrated conflicts.  In *Culbreath*, the factors that compelled disqualification were (1) the fact that Mr. Parrish was acting as a prosecutor and making the broad discretionary decisions that a prosecutor must make, while his pay was dependent upon an advocacy group, and (2) the hourly-wage arrangement gave Mr. Parrish a direct personal financial stake in investigating and prosecuting as many sexually-oriented businesses as possible.  In contrast, in the instant case, Mr. Fort is not acting as a criminal prosecutor; indeed, the lawsuit that is the subject of this appeal was initiated by Pfizer.  In addition, Mr. Fort does not have the same personal stake in the litigation as did Mr. Parrish in *Culbreath*.  The record reflects that Mr. Fort will continue to receive his salary from the MTC, and that he is not being paid any more either for representing the Commissioner in this matter or in a way that is dependent upon the outcome.  In light of these factual distinctions, we must respectfully disagree that *Culbreath* is controlling.

In *In re Youngblood*, the Court acknowledged that a conflict of interest may arise where an in-house attorney for an insurance company represents an insured in a matter involving the insurer's insurance policy.  *In re Youngblood*, 895 S.W.2d at 328.  The Court held, however, that disqualification is not appropriate where the record shows merely the *potential* for a conflict of interest.  The Court explained:

The relationship of employer-employee obviously creates the potential for conflicts of interest. However, in the situation posed by the inquiry, it is not a potential conflict that is prohibited, but the "reasonable probability" of a real conflict. The employment of an attorney by an insurer to represent the insured does not create the relationship of attorney-client between the insurer and the attorney, nor does that employment necessarily impose upon the attorney any duty or loyalty to the insurer which impairs the attorney-client relationship between the attorney and the insured or impedes the performance of legal services for the insured by the attorney. Where the employer is not also a client, a conflict will not occur unless the attorney is obligated by the terms or circumstances of employment to protect the interest of the employer even to the detriment of the insured.

*Id.* at 328 (citation omitted). In the record in this case, the Commissioner insists that Pfizer has not demonstrated the "reasonable probability" of any conflict resulting from Mr. Fort's simultaneous employment by the MTC and his representation of the Commissioner in the lawsuit. We agree. We must conclude that the potential conflicts which Pfizer asserts are not a basis for disqualifying Mr. Fort or for denying permission to appear *pro hac vice*.

### *Orderly Administration of Justice*

The trial court also disqualified Mr. Fort from representing the Commissioner based on the trial court's need to maintain the orderly administration of justice. To some extent, the trial court's denial of permission to appear *pro hac vice* was also based on this finding. The trial court did not clearly explain the basis for holding that Mr. Fort's participation would interfere with the orderly administration of justice. However, in comments at the hearings on this matter, the trial court expressed several concerns; we assume that these concerns underlie the trial court's holding on the "orderly administration of justice" and address them in this context.

Trial courts have very broad authority to control their dockets, control proceedings in court, and to maintain the orderly administration of justice. The trial court may, for example, order a court clerk to produce needed files, dismiss cases for failure to prosecute, and establish comprehensive orders on media access to discovery documents. *See In re Lineweaver*, 343 S.W.3d 401, 413-414 (Tenn. Ct. App. 2010); *In re NHC-Nashville Fire Litigation*, 293 S.W.3d 547, 569 (Tenn. Ct. App. 2008) (hereinafter "*In re NHC*"); *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). The trial court's authority includes the discretion to disqualify an attorney or to deny permission to appear *pro hac vice* under certain circumstances. *See, e.g., Ross v. Reda*, 510 F.2d 1172, 1173 (6th Cir. 1975). This discretion, however, is not unfettered.

The trial court below repeatedly noted that the MTC embraces tax policy goals and objectives. It expressed concern that Mr. Fort's participation in the litigation would turn Pfizer's tax lawsuits into a forum to determine public policy on taxation of multistate entities, commenting that this "is not the purpose of litigation."[18]

Respectfully, the record in this case does not support either disqualification or denial of admission *pro hac vice* based on whether Mr. Fort privately seeks to use Pfizer's lawsuit to further particular ideas on tax policy. Parties may have any number of reasons for engaging in litigation, such as acting on an old grudge, establishing a principle, or effecting social change. Their private motivations need not be the subject of inquiry by the court unless and until they manifest in the form of words or deeds that are objectionable or an abuse of the judicial system. The record contains no indication that Mr. Fort engaged in conduct that in any way interfered with the trial court's ability to maintain orderly proceedings.

Perhaps the more pragmatic concern argued by Pfizer and eventually voiced by the trial court is the spectre of overly broad or complicated discovery as a result of Mr. Fort's participation in inherently complex litigation. The trial court candidly expressed concern about whether overly broad discovery requests or repeated requests for discovery limits would burden the trial court's "judicial resources."

Complex litigation raises a number of valid concerns for a trial court, and near the top of the list is the trial court's ability to manage discovery that may involve the production of tens of thousands of documents. *See, e.g., In re NHC*, 293 S.W.3d at 569 (nursing home fire litigation spawned the production of over 35,000 documents in discovery, termed "an avalanche of documents"). "We recognize that judicial resources are limited, and . . . are mindful that [Pfizer's lawsuit] was not the only matter on the trial court's docket." *Id.* Particularly "in view of the trial judge's multiple obligations and responsibilities," the trial court has wide discretion to issue orders and to establish protocols to manage the litigation. *Id.*

The trial court's arsenal, however, does not include the discretion to *disqualify* a lawyer merely because his participation may affect the type or scope of discovery sought. Certainly Mr. Fort's extensive experience with the MTC and in the taxation of multistate entities may affect the discovery sought by the Commissioner in Pfizer's litigation; that is part of the Commissioner's stated reason for retaining him. The Commissioner's discovery requests may include some that the trial court deems overly broad. This possibility, however, is no

---

[18]Similarly, in its amicus brief, COST argues that the trial court's failure to disqualify Mr. Fort would mean that every lawsuit filed by a COST member "would become an open forum for policy discussion and debate, subsuming the underlying issues. . . ."

basis for disqualifying Mr. Fort, any more than Pfizer's promise to resist such broad discovery is a basis for disqualifying Pfizer's counsel. Discovery disputes may be dealt with as they occur through the issuance of protective orders and other measures, but the mere prospect of them is not a reason to disqualify a lawyer or to deny permission to appear *pro hac vice*.

We must respectfully hold that the appellate record in this cause does not support either disqualification of Mr. Fort or denial of the motion for permission to appear *pro hac vice* based on the trial court's need to maintain the orderly administration of justice.

### *Confidentiality*

The trial court also denied Mr. Fort permission to appear *pro hac vice* and disqualified him from representing the Commissioner because his participation in the litigation would jeopardize Pfizer's interest in keeping confidential the sensitive tax and business information that will be produced in discovery. The trial court noted that "all the documentation that comes forward in discovery will be shared with Mr. Fort or whoever the Attorney General, in its position as counsel, finds appropriate and permissible to share it." The trial court indicated that allowing this could undermine Pfizer's expectation that the information produced in discovery would remain confidential and expressed concern about "the appearance of a representative whose concerns are much greater and the exposure that the employees and the operations of the taxpayers would be exposed to. And I don't know how to ensure that." Therefore, based on the risk that Mr. Fort, an employee of the MTC, would share Pfizer's confidential information with the MTC or its member states, the trial court disqualified him from representing the Commissioner in these proceedings.

On appeal, the Commissioner argues that this case does not present a unique concern over the confidentiality of sensitive information produced in the course of litigation. He argues that the trial court's ruling was based purely on speculation and not on any actual dispute over confidential information that had arisen in this case. Moreover, the Commissioner claims, the sort of information that will likely be produced in this case is information to which the MTC already has access. Virtually all states and the MTC are signatories to the Uniform Exchange of Information Agreement, which permits the exchange of "any information in the possession of one party which could reasonably be considered useful to other parties for the facilitation of tax administration," including "any other relevant information related to specific transactions or any other data . . . with respect to the determination of the existence, or possible existence of liability." In other words, the information to which Mr. Fort would have access in this litigation is information that the Commissioner could share with the MTC or its member states, regardless of whether Mr. Fort represents the Commissioner in this case. In addition, Tennessee participates in the

MTC's Joint Audit Program and is currently participating in nineteen joint audits. The Commissioner argues that MTC auditors are already entrusted with confidential taxpayer information, so concerns about sharing the information with Mr. Fort, an attorney with an unblemished ethical record, are unfounded.

In response, Pfizer argues that the trial court's decision was based on its recognition that the Commissioner "has considerable authority to compel [Pfizer] to produce extensive financial information for examination and review." Pfizer represents that thousands of pages of documents have already been produced in this litigation, and that the Commissioner "has expressed a consistent desire to extend the discovery process, making the full extent of information to be produced in this litigation still unknown." As examples of sensitive information produced, Pfizer cites board meeting minutes, distributor agreements, descriptions of its distribution and manufacturing processes, customer names and order information, and many documents that reveal the inner workings of Pfizer's business operations. If Mr. Fort were permitted to participate as co-counsel to the Attorney General, Pfizer contends, the MTC would *ergo* have access to all of this sensitive information. Despite the Uniform Exchange of Information Agreement cited by the Commissioner, Pfizer says that Tennessee's legislature has limited the information that can be shared with the MTC to "[r]eturns, tax information and tax administration information." *See* Tenn. Code Ann. § 67-1-1704(g) (2011). Furthermore, Pfizer has not been audited in the Joint Audit program, and the information expected to be produced in this litigation is broader than the documents that would be produced in an audit. Therefore, Pfizer argues, the trial court was correct in disqualifying Mr. Fort based on concerns over taxpayer confidentiality.[19]

The record in this cause includes affidavits by Mr. Fort, in which he acknowledged that, as co-counsel to the Attorney General, he would "have a sole and undivided loyalty to represent the interest of the State [of Tennessee] in this litigation," and asserted that he was "under no duty a[s] counsel for the Commission to share confidential taxpayer information received in [his] capacity as a Counsel for the State of Tennessee with any other State, or with [his] employer," namely the MTC. Mr. Fort stated that he understood that he was "bound by the taxpayer confidentiality provisions of the State of Tennessee as set forth in Tennessee Code Annotated, Section 67-1-1704, and other applicable laws," which prohibit him from disclosing "returns, tax information or tax administration information" obtained through the litigation. In addition, Mr. Fort said that he is familiar with Tennessee's RPC in Supreme

---

[19]In its *amicus curiae* brief, the Chamber of Commerce also argues that taxpayer confidentiality would be compromised if Mr. Fort is allowed to participate in these proceedings. It argues that, despite the requirement in Tennessee Code Annotated § 67-1-1702, the confidentiality that is legitimately expected by Pfizer is diminished by allowing an MTC attorney to access all aspects of this state tax litigation.

Court Rule 8, and that he has consented to the disciplinary jurisdiction of the Tennessee Board of Professional Responsibility.

For purposes of our analysis, we assume that the MTC would have access to much of the relevant information produced in this litigation through the Uniform Exchange of Information Agreement. We also assume, however, that some of the confidential information that will be produced in discovery is not covered by that Agreement. The fact that we find it necessary to state these assumptions points out a major difficulty with the trial court's ruling. The ruling is not based on an actual dispute over the disclosure of identified information to Mr. Fort; it is instead based on the assumption, however valid, that such disputes will arise in the future.

Several overriding principles inform our analysis. First, in *In re Youngblood*, the Court found that the Board of Professional Responsibility improperly opined that an attorney who was employed by an insurance company was prohibited from representing an insured based on a "potential" conflict of interest instead of the " 'reasonable probability' of a real conflict." *In re Youngblood*, 895 S.W.2d at 328. This part of our analysis, of course, involves confidentiality rather than conflict of interest, and disqualification by a court instead of an opinion by the Board of Professional Responsibility. However, we glean from *In re Youngblood* that decisions such as disqualification should be based on something more than a potential problem. In the case at bar, while Pfizer cites to general information that is expected to be produced in discovery, it has not pointed to an actual document to which Mr. Fort allegedly should not have access.

Next, *In re Youngblood* also cautions that counsel may be expected to act in compliance with the Code of Professional Responsibility and devote his loyalty to the client, even if counsel is paid by someone other than the client. *Id.* at 328-29. Again, we recognize that the issue under analysis is not conflict of interest or divided loyalties, as was presented in *In re Youngblood*; rather, it involves keeping confidential the sensitive information produced in discovery. However, from *In re Youngblood*, we take it that we should assume, unless shown otherwise, that Mr. Fort will comply with Tennessee Code Annotated § 67-1-1704, Rule 8, and any applicable orders of the trial court.

Third, under Tennessee's Rules of Civil Procedure, the trial court may issue a wide array of protective orders, limiting the scope of discovery or limiting the disclosure of documents and information. These orders can be tailored to meet the particular circumstance presented. While we do not minimize the challenges presented, we note that issues regarding sensitive information produced in discovery arise in many types of litigation, such as business litigation between rival companies, litigation involving highly personal or medical information, litigation in which a company produces documents that include customer

information that could be used by identity thieves, and the like. In all of these, the trial court is charged with responsibility for taking measures to protect the sensitive information from misuse by the parties, their attorneys, or third parties. *See, e.g., In re NHC*, 293 S.W.3d at 573 & n.27 (noting the trial court's decision to issue protective orders and orders placing certain documents under seal, which serve to prevent third parties from "using court files to access personal information for private gain").

Finally, of the "options available [to trial courts] to insure that the proceedings are fair both in appearance and in fact . . . [d]isqualifying an attorney is the most drastic." *In re Ellis*, 822 S.W.2d at 605. Therefore, courts "should be reluctant to disqualify a litigant's counsel of choice," and should disqualify chosen counsel "only when no other practical alternative exists." *Whalley Dev. Corp.*, 834 S.W.2d at 332; *In re Ellis*, 822 S.W.2d at 605.

These principles indicate clearly that disqualification of a litigant's chosen counsel is an inappropriate tool to head off potential disputes over discovery and the confidentiality of information produced in litigation. There is no showing in this record that "no other practical alternative [to disqualification] exists." *In re Ellis*, 822 S.W.2d at 605.

From Pfizer's briefs and the amicus briefs, it appears that concerns over the disclosure of confidential taxpayer information to Mr. Fort is at the heart of their insistence that allowing Mr. Fort to represent the Commissioner is tantamount to permitting the MTC to intervene. In essence, they contend that Mr. Fort, as the MTC's in-house counsel, personifies the MTC, and disclosure of Pfizer's confidential information to Mr. Fort *is* disclosure to the MTC. In this way, it amounts to *de facto* intervention by the MTC.

Although Pfizer, COST, and the Chamber of Commerce argue strenuously that permitting Mr. Fort to participate amounts to intervention by the MTC, and although they cite authority showing that intervention by the MTC is not appropriate, they offer no authority to support their assertion that *disqualification* of Mr. Fort is appropriate or justified. While Mr. Fort is an in-house attorney for the MTC, he is nevertheless an attorney representing a client, and Pfizer has cited no authority for treating an in-house attorney differently in this regard from any other attorney with multiple clients. In fact, in *In re Youngblood*, the Court indicated that an in-house attorney for an insurance company should be treated the same as an independent lawyer when representing the insured. *Id.* at 328-29. In the case at bar, Mr. Fort is acknowledged to be a highly ethical lawyer and he has acknowledged that he must comport with both Tennessee laws and the trial court's orders as to confidential information disclosed in discovery. Pfizer has not demonstrated why the trial court should not reasonably expect Mr. Fort to comply.

Moreover, while Pfizer, COST, and the Chamber of Commerce all argue that Mr. Fort's participation is "tantamount" to intervention by the MTC, it is in fact *not* intervention. The issue is disqualification of a litigant's counsel of choice, and both this Court and the trial court are obliged to apply the law applicable to disqualification, not intervention. Pfizer has not demonstrated that its confidential information cannot be adequately protected by appropriate protective orders. Thus, Pfizer has not shown that there is "no practical alternative" to disqualification of Mr. Fort.

Therefore, we must conclude that the trial court erred in disqualifying Mr. Fort from representing the Commissioner in these proceedings, and in denying the Commissioner's motion for permission for Mr. Fort to appear *pro hac vice*.

Accordingly, the trial court's order must be reversed, and the cause remanded for entry of an order permitting Mr. Fort to appear on behalf of the Commissioner *pro hac vice*. On remand, we note that, in the trial court proceedings, the Commissioner argued repeatedly that it especially wanted the benefit of Mr. Fort's expertise to assist in the important discovery phase of the litigation. While this appeal has been pending, the litigation has not stood still, and discovery has proceeded. The trial court is authorized on remand to give the Commissioner leeway to revisit some aspects of discovery if necessary. We recognize some inefficiencies in this, but that is, after all, why the **In re Ellis** Court cautioned that disqualification of a party's chosen attorney "invariably causes delay, increases costs, and deprives parties of counsel of their choice." **In re Ellis**, 822 S.W.2d at 605.

## CONCLUSION

The trial court's decision is reversed, and the cause is remanded for further proceedings in accordance with this Opinion. Costs on appeal are to be taxed to Appellees Pfizer, Inc., and Pharmacia Corporation, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE